**DAILEY v. STATE.**

**1 Div. 921.**

Supreme Court of Alabama.

Dec. 17, 1936.

Rehearing Denied Jan. 21, 1937.

Granade & Granade, of Chatom, for appellant.

BOULDIN, Justice.

Appellant, Wash Dailey, was jointly indicted with Wesley Berry, Joe Skumro, Nollie Mizelle, and Eugene Mizelle for the murder of Abe Baxter.

After severance, separate trials have been had. This is the third to be reviewed by this court. See Berry v. State, 231 Ala. 437, 165 So. ·97, and Skumro v. State, 170 So. 776.

Eugene Mizelle became a witness for the State, indeed the only direct witness as to the fact of a murder, the parties present and participating therein, the circumstances attending the slaying, and later efforts at concealment and suppression of evidence.

The chief insistence for reversal rests on three propositions, viz.:

1. This witness, by his own version of the affair, was an accomplice.

2. There was no sufficient evidence of the corpus delicti.

3. There was no corroborative evidence tending to connect Wash Dailey, this appellant, with the commission of the crime as required by Code, § 5635.

The governing rules of law on these questions were considered in the Berry and Skumro Cases, supra. They need not be repeated here.

Considering the evidence as presented in the record now before us, we conclude, for reasons stated in the Skumro Case, the evidence of duress under which Mizelle fired upon the deceased, taken in connection with all the evidence, did not show, as matter of law, that he was not a guilty participant in the killing. The readiness with which he went through the pockets of the dead man, got his money, his watch, his pocket knife, handed them to this appellant and shared in the ·division of the money, his joinder in repeated and grue-

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

some efforts to conceal, all appearing in his testimony affords further ground for inference that he was a willing accessory to or participant in the crime. Forcing him into the lead to fire the first shot may, inferentially, have been to keep him silent thereafter. The deceased was his uncle, brother of his mother, who is still living. Witness was staying, at least part of his time, with this uncle.

The trial court, at defendant's instance, instructed the jury that witness was an accomplice, and fully instructed them on the necessity for corroboration; and the nature of corroborative evidence required both on the corpus delicti and on the connection of defendant with the slaying.

Without inquiring whether corroborative evidence in proof of the corpus delicti was necessary (16 C.J. page 700), we find numerous circumstances tending to corroborate Mizelle's testimony that Abe Baxter is dead, and came to his death by violence. Several of those circumstances are recited in the latter part of the opinion in the Skumro Case, supra.

■ This case involved both proof of the corpus delicti and proof of defendant's connection with the killing. Evidence may tend to support one and not the other of these issues. Evidence tending to establish either of these major facts was admissible. If any item of evidence should be limited to proof of the corpus delicti, a ruling to that effect should have been requested of the trial court.

■ Corroborative evidence connecting the defendant with the murder may relate to facts testified to by the accomplice, but the probative force of such evidence cannot depend on the testimony of the accomplice. It must strengthen that of the accomplice; must bring in material facts tending to connect the accused with the crime from sources other than the bare testimony of the accomplice. This corroborative evidence may, of course, relate to matters wholly unknown to the accomplice, neither testified to by him, nor connected with what he says.

■ One of the circumstances tending to connect the defendant with the killing relates to the pocketknife of the deceased. Mizelle said he took this knife from the pocket of deceased at the time of the murder and robbery, and handed it to this defendant. Other witnesses testify that some three months later, defendant had possession, and disposed of the knife to another. The knife was in court and was quite positively identified by the sister of decedent, mother of Mizelle, as the pocketknife of deceased which had been in the family many years. Defendant and his witnesses denied the identity of the knife, testified that the knife in court was obtained from another source prior to the homicide. The knife, with its identifying marks, as well as the witnesses being before the jury, it was for them to say whether it was the pocketknife of deceased. If they so found, it would follow that defendant's contention was false, and, thereupon, an inference that he could make no honest explanation of his possession of the knife other than that of Mizelle.

The identity of this knife became a material fact, which, if the State's evidence be true, tended to connect defendant with the homicide.

■ Other incidents having some tendency in this direction appear in the evidence. The corroborative evidence was sufficient to carry the case to the jury. Skumro v. State, supra; Malachi v. State, 89 Ala. 134, 8 So. 104; 6 Alabama Digest Criminal Law, 419 et seq., ☞511; 1 C.J. page 708.

Appellant insists the trial court erred in admitting testimony to the effect that, several days after the body of deceased had been removed from its first hiding place to an abandoned house known as the Donald place, foul odors had developed and buzzards gathered, Mizelle, Skumro, and Berry took the remains to a spring nearby, boiled it, stripped the bones, put them into a sack, and concealed them. This was in the absence of Dailey, who was in jail. It is argued this gruesome transaction shed no light on the guilt of this defendant and such evidence would tend to arouse feeling and prejudice to his hurt.

■ The evidence was relevant as part of a continuous chain of events, looking to concealment and destruction of evidence in which Dailey, according to Mizelle, did participate, both before and after the above event. He was present, according to Mizelle, as the leader in the killing, the concealment of the body at the Stremick house where the homicide occurred, its removal to the Donald house, and finally in taking the sack of bones, and belongings of deceased and so disposing of same at

Mill Creek on the Mississippi side of the State line as to indicate that here were the remains of deceased, but that he had come to his death by a shot from his own gun, through accident or suicide.

The doings at the spring shed light on the identity of these remains as found later on.

Another ruling on evidence was the admission over objection and exception of defendant, of Mizelle's testimony to the effect that while in jail, and in the absence of this defendant, Wesley Berry asked Mizelle to play crazy, saying, by this ruse, all could get out.

■ It is a well-recognized rule that the incriminating acts or statements of one confederate after the ends of the conspiracy have been accomplished, and no longer exist, are not admissible against another in his absence and without his knowledge and consent.

■ But it is a further rule, generally recognized, that where there appears a continuing conspiracy to destroy the evidence of the crime, suppress testimony, the efforts of one in the accomplishment of this common purpose are admissible against each. Such is the case here. 16 C.J. page 661 et seq.; Lancaster v. State, 214 Ala. 2, 106 So. 617; Scott v. State, 30 Ala. 503.

Berry, on cross-examination, admitted making statements "something like" those testified to by Mizelle. This effort of Berry was a circumstance corroborative of the evidence of Mizelle, the accomplice, touching the corpus delicti.

The motion for a new trial challenges the credibility of the testimony of Eugene Mizelle, because of his position as an accomplice, because of its improbability, and because admittedly he was advised by his mother that it was best for him to tell all.

Many question marks may be made by the thoughtful student at various points in the record. These were all for the solution of the jury. Three juries have returned verdicts of guilty on the testimony of Eugene Mizelle, as their essential basis, corroborated in such manner as to meet the requirements of the statute. There is no sufficient ground to overturn these findings. We find no reversible error in the record.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.