THE STATE OF OHIO, APPELLEE, *v.* SHELTON, APPELLANT.

[Cite as State v. Shelton (1977), 51 Ohio St. 2d 68.]

(No. 77-127—Decided July 13, 1977.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. Thomas P. Longano* and *Mr. Robert R. Hastings, Jr.,* for appellee.

*Mr. Donald L. Weber* and *Mr. Daniel Reif,* for appellant.

O'NEILL, C. J. On November 25, 1974, the defendant and Bates apparently agreed to rob the Warner Tavern in Cincinnati, Ohio. After deciding that a gun was necessary, Shelton purchased a .12 gauge J. Stevens single barrel shotgun from Kenneth Carter. Shortly after midnight on the morning of November 26, the defendant and Bates entered the Warner Tavern. Both men were wearing stocking masks. Shelton was armed with the shotgun.

Mrs. Lois J. Wells was tending bar and talking to Robert Schultheis who was seated at the bar in the rear part of the barroom. Lloyd Adkins, an off-duty Pinkerton guard, was seated at the bar near the front entrance. Adkins and Schultheis were approximately 18 feet apart.

Leroy Bates proceeded to the rear of the tavern where Schultheis was seated. The defendant approached the center portion of the bar. Mrs. Wells asked the man what he wanted, whereupon Shelton raised the shotgun over the bar and pointed it at her. Mrs. Wells responded, "All right, I know what you want."

When Bates started to move around to Mrs. Wells' side of the bar it was her intention to let him take the money. As Mrs. Wells moved to the rear of the bar, she heard Adkins say to Shelton, "Oh, no you don't." She then turned and looked toward the front of the tavern where

Shelton and Adkins were struggling. Shelton knocked Adkins off balance, stepped back, and fired a fatal shot. Both Bates and Shelton then fled the tavern.

At approximately 1:30 A. M. on November 26, 1974, Kenneth Carter received a telephone call from Leroy Bates. Bates asked Carter to "Come and get that shotgun," and said that Shelton had shot a man with it. Carter refused to take the gun.

The record reflects that when Bates was unsuccessful in his attempt to convince Carter to reclaim the murder weapon, he wrapped the shotgun in a towel and attempted to dispose of it in an area near Mt. Airy Forest. The gun and towel were later found.

Both Bates and Shelton were arrested soon after the killing. During the trial of the defendant, the state presented an overwhelming amount of evidence pointing to the defendant's involvement in the commission of the aggravated robbery and murder.

I.

Appellant advances three propositions of law; the first two are summarized as follows:

■ The trial court substantially erred to the prejudice of appellant in denying his motion to dismiss for the reason that the provisions of R. C. 2903.01, 2929.02, 2929.03 and 2929.04 unconstitutionally permit arbitrary imposition of the death penalty in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

■ The trial court substantially erred to the prejudice of appellant in denying his motion to dismiss for the reason that the death penalty imposed by R. C. 2929.04 constitutes cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.

These propositions of law were rejected by this court in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 357 N. E. 2d 1035. See, also, *State* v. *Black* (1976), 48 Ohio St. 2d 262, 358 N. E. 2d 551, and *State* v. *Downs* (1977), 51 Ohio St. 2d 47, 364 N. E. 2d 1140.

## II.

Appellant's third proposition of law states:

The trial court erred in allowing in evidence, over defendant's timely objection, testimony by a state's witness regarding an alleged telephone conversation between the witness and a co-conspirator, which testimony constituted an extra-judicial declaration of the co-conspirator, made in the absence of the defendant, out of the defendant's presence, without the defendant's knowledge, after the termination of the conspiracy and which tended to prove the guilt of the defendant.

After the shooting, the defendant and Leroy Bates fled from the Warner Tavern. They ran through the Fairview School yard and then back to Connie Bates' apartment on Wheeler Street. Connie Bates saw the defendant in her bathroom washing blood from his hands. He also had blood on his fatigue jacket and on his pants.

At approximately 1:30 A. M., Carter received a telephone call from Leroy Bates. In recalling the conversation during the trial, Carter's testimony proceeded as follows:

"Q. Later on that evening did anything happen to bring your attention back to this particular gun?

"A. About 1:30 or something, I received a call from Leroy Bates; and he told me, 'Come and get the shotgun.'

"Mr. Weber: Objection as to any conversation.

"The Court: Overruled.

"Q. What did he say to you on the phone call?

"A. He told me 'Come and get the shotgun,' that Ellis had shot a man with it.

"Q. What did you say to him?

"A. I told him to keep the gun, I didn't want it."

Appellant claims the court's ruling as error. As a general rule, he contends, the incriminating, inculpatory, extrajudicial declarations of a conspirator, after termination of the common purpose and in the absence of or without the knowledge of his fellow conspirators, do not bind the nondeclarants and such statements are inadmissible to

prove the participation of co-conspirators in the crime charged. Applying this rule to the case at bar, appellant continues, Carter's testimony was inadmissible. Appellant argues that at the time of the alleged telephone conversation, the conspiracy to rob had terminated and the conspiracy was, therefore, at an end; and that the alleged conversation took place out of the presence of the defendant, and was sufficiently remote in time from the commission of the criminal act charged as to not be appropriately considered as part of the *res gestae.* Consequently, appellant contends the admission of such testimony requires that his conviction be reversed.

Subject to certain exceptions, this court finds little complaint with the appellant's abstract principle of law. In *Patton* v. *State* (1856), 6 Ohio St. 467, this court stated in paragraph one of the syllabus:

"The acts and declarations of a conspirator may, after sufficient proof of conspiracy, be given in evidence to charge his fellow-conspirator, but subject always to the *limitation* that the acts and declarations admitted be those only which were made and done during the pendency of the criminal enterprise, and in furtherance of the common object." Accord *Rufer* v. *State* (1874), 25 Ohio St. 464; *Kent* v. *State* (1884), 42 Ohio St. 426; *Neighbours* v. *State* (1930), 121 Ohio St. 525, 169 N. E. 839. See, also, 4 A. L. R. 3d 671.

However, it is well recognized that the conspiracy does not necessarily end with the commission of the target crime. Thus, a subsequent declaration of a conspirator may be admissible against any co-conspirator if it was so proximate, in terms of time and place, as to be within the *res gestae*; if the conspirators were still concerned with the concealment of their criminal conduct or their identity; or if the fruits of the crime had not been disposed of by, or divided among, the conspirators. 3 Wharton's Criminal Evidence (13 Ed.), 338, Section 643.

In addressing the issue of concealment, this court, in *State* v. *DeRighter* (1945), 145 Ohio St. 552, at 558, 62 N. E. 2d 332, summarized the rule as follows:

" 'The acts and declarations of a conspirator are admissible against the co-conspirator when they are made during the pendency of the wrongful act, and this includes not only the perpetration of the offense, but also its subsequent concealment. The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication.' " Accord *Dailey* v. *State* (1936), 233 Ala. 384, 171 So. 729; *Hooper* v. *State* (1933), 187 Ark. 88, 58 S. W. 2d 434; *Reed* v. *People* (1965), 156 Colo. 450, 402 P. 2d 68; *Smith* v. *State* (1933), 47 Ga. App. 797, 171 S. E. 578; *State* v. *Borserine* (1959), 184 Kan. 405, 337 P. 2d 697; *Allen* v. *Commonwealth* (1917), 176 Ky. 475, 196 S. W. 160; *People* v. *Mol* (1904), 137 Mich. 692, 100 N. W. 913; *Watson* v. *State* (1933), 166 Miss. 194, 146 So. 122; *State* v. *Strait* (Mo. 1925), 279 S. W. 109; *State* v. *Gauthier* (1925), 113 Ore. 297, 231 P. 141.

The court finds the principles of *DeRighter* dispositive of this issue. Approximately an hour after the shooting, an accomplice in the instant case made a statement implicating the defendant while he, the accomplice, was trying to dispose of the murder weapon. Under such conditions such statements are admissible. Moreover, in light of the overwhelming evidence of the defendant's guilt, this court has little trouble finding Carter's testimony of the accomplice's statement reliable and trustworthy.

This proposition of law is not well taken.

Accordingly, for the reasons stated, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.