HOLOHAN, Chief Justice.
The appellant, Joseph Louis Yslas, was convicted of first degree murder, second degree burglary, and theft of property valued over $100. He was sentenced to imprisonment on each charge for the term provided by law with all sentences to run concurrently. Appellant filed a timely appeal. Pursuant to A.R.S. § 13-4031 we have jurisdiction. We reverse the convictions.
The evidence adduced at trial indicates that, on the evening of August 3, 1981, Henry Tona Garcia and his friend Art Pain were driving around Tucson, with plans to steal a lawnmower if they happened to see one. They had put bolt cutters in the car in case they saw one chained up. They saw appellant (Pain’s cousin) and someone known as “Gaby” outside the El Dorado bar sometime after 1:30 a.m. Appellant told them he knew where to find a lawnmower, and he suggested the possibility of burglarizing the house where it was located.
The four then drove to the house of the victim, Gregoria Pesquería, an elderly woman who lived alone across the street from a house where appellant formerly lived. Appellant, telling Garcia not to come inside, took the bolt cutters and went with Pain into the house. When “Gaby,” who was asleep in the car, woke up and started making a lot of noise, Garcia drove him back to the El Dorado.
When Garcia returned, Pain ran toward him. Excited, anxious and out of breath, Pain asked where Garcia had been, and said he had been running all over looking for Garcia. Pain said they had to get away because “he (appellant) hit her.”
Garcia drove the car down the alley to the victim’s house and saw a sewing machine, a clock, a radio, and other things piled up on the porch. The two men put the property in the trunk. When Garcia and Pain reached the back door, Garcia thought he heard two old people, one a woman, talking inside. When Garcia saw a television in the hallway, he asked Pain if he had touched it. When Pain said he had, Garcia took it because it probably had Pain’s fingerprints on it. While he was inside, he saw appellant searching through the house. The living room was a mess and someone was lying on the floor. The three then left the scene of the crime.
*62 When they dropped off the sewing machine and other items early in the morning at Garcia’s, Garcia’s brother-in-law Alex Perez noticed some of the sewing machine drawers were missing. Garcia, Pain and appellant went back to the house to get them because they would have fingerprints on them. While there, appellant searched again for the money he thought was there.
Shortly afterwards, at approximately 7:00 a.m., Garcia and Pain took appellant home and gave him the television to sell for himself in exchange for his share of the sewing machine.
Police found Mrs. Pesquería dead that morning, August 4, 1981, at 6:43 a.m. The cause of death was a skull fracture and there were seven distinct injuries to the body with a possibility of multiple blows to some areas. Appellant’s fingerprints were found on an eyeglass lens and a small hand mirror, and Pain’s fingerprints were on the doorway between the living room and the kitchen.
When Garcia woke up at home later that day, his sister, Rosemary Perez, confronted him alone with a newspaper article about the murder and asked if he had been involved. He admitted that he was involved in the theft but not the murder. Garcia then went with Pain to appellant’s home. Appellant said not to worry about it, “I hit her and she died.” They decided not to tell anyone about it. Garcia said he now wanted to get rid of the stolen property and appellant said he would take it.
Garcia and Pain went back to Garcia’s to get the property, but before they could leave with it Rosemary Perez confronted Pain alone and threatened to go to the police if he did not talk to her. Pain told Perez that appellant “hit her” with a “fierro” (a Spanish word for tool). She also knew there had been bolt cutters with hair and blood on them in Garcia’s truck. (Garcia turned the bolt cutters over to the police after he had reached a plea agreement with the state.)
Appellant was not at home when Garcia and Pain brought the stolen property to his residence, so they eventually took it to the desert to be discarded. Appellant tried to sell the TV set to friends but was unsuccessful.
The police received information which linked appellant with the crime along with two others. Appellant, after his arrest, identified Garcia and Pain, and they were also arrested. Garcia pled guilty to burglary and theft, without jail sentence, in return for agreeing to testify in the separate cases against appellant and Pain.
Appellant raises two issues on appeal, but we need only consider one issue — the admissibility of certain testimony concerning statements by co-conspirators. In light of our resolution of that issue we need not consider appellant’s other issue or the issue raised by the state in its cross appeal.
The appellant challenges the admission of the testimony of Garcia and Rosemary Perez concerning the statements made by Pain to them that the appellant “hit her” with a fierro. Appellant also challenges the admission of the testimony of Garcia concerning the statement by Pain to him that “he (appellant) hit her.” Appellant further claims that Garcia’s statement on cross-examination that Pain told Perez that the bolt cutters were used to do the beating was also inadmissible. Since defense counsel elicited this latter testimony, the issue is deemed waived for appeal. State v. Taylor, 99 Ariz. 151, 407 P.2d 106 (1965); State v. Viertel, 130 Ariz. 364, 636 P.2d 142 (App.1981).
Appellant attacks the admission of the Pain statement to Garcia and Perez as violative of his right to confrontation of witnesses. In the opening brief the appellant concedes that a prima facie showing of conspiracy was made, and the challenged testimony would be admissible under Ariz. R.Evid. 801(d)(2)(E). It is appellant’s position that the testimony, although admissible under the cited rule of evidence, is not admissible because it deprives him of his constitutional right of confrontation of witnesses presented against him. We note that trial counsel objected at trial to the statements being admitted on much broad *63 er grounds than the present position. We also note that in the reply brief appellant denies that he is conceding that the statements were in furtherance of a conspiracy.
Normally we do not review issues not raised, but we are required to review the record of criminal cases for fundamental error and reverse where such error is found to be prejudicial to the defendant. State v. Sorrell, 132 Ariz. 328, 645 P.2d 1242 (1982). In addition we do not determine constitutional issues unless a decision is necessary to determine the merits of the action. School Dist. No. 26 of Yuma County v. Strohm, 106 Ariz. 7, 469 P.2d 826 (1970).
In reviewing the record before us it is not necessary to decide the constitutional issue raised because a resolution of the case can more properly be made on another basis. The constitutional issue attempted to be raised by appellant has been answered by our recent decision in State v. Martin, 139 Ariz. 466, 679 P.2d 489 (1984).
CO-CONSPIRATOR THEORY
Rule 801(d)(2)(E), Rules of Evidence, provides that a statement is not hearsay if it “is offered against a party and is * * * a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy.” *
Appellant does not agree that he was part of the conspiracy at least at the time of the murder. He maintains that he had entered the house alone, and, finding no money, he left. He was returned by Pain and Garcia to the El Dorado. Appellant argued at trial that this constituted his early withdrawal from the conspiracy. The evidence contrary to appellant’s position was sufficiently strong for the trial court to find that a prima facie case of conspiracy was established between the three men.
The issue, then, is whether the statement in question was made “during the course of” the conspiracy. The state argues that it was “in furtherance” of the conspiracy as its purpose was to keep Rosemary from going to the police, which she had threatened to do if Garcia and Pain weren’t truthful with her.
The “usual rule” for determining what behavior was “during the course” of the conspiracy is whether the behavior “was made while the plan was in existence and before its complete execution or termination.” J. Weinstein and M. Berger, 4 Weinstein’s Evidence 11801(d)(2)(e), p. 176 (1981). Justice Harlan of the United States Supreme Court explained what the limits of the rule should be:
[Ajfter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment.... Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators ____ [Holding otherwise] would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind conspirators. Grunewald v. United States, 353 U.S. 391, 401-402, 77 S.Ct. 963, 972, 1 L.Ed.2d 931 (1957).
See also Anderson v. United States, 417 U.S. 211, 218, 94 S.Ct. 2253, 2259, 41 L.Ed.2d 21 (1974). Thus the “crucial factor” is the necessity for some showing that the later activities after the central crime were part of the original plan. United States v. Hickey, 360 F.2d 127 (7th Cir.), *64 cert. denied 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966), Commonwealth v. Pass, 468 Pa. 36, 360 A.2d 167 (1976). But see, State v. Shelton, 51 Ohio St.2d 68, 364 N.E.2d 1152 (1977), vacated on other grounds 438 U.S. 909, 98 S.Ct. 3133, 57 L.Ed.2d 1153 (1978).
Garcia and Pain initially had only planned on stealing a lawnmower and only if they happened to find one within easy reach. It is unclear that after meeting appellant they had any specific plans for what they would steal when they reached the victim’s house. Granting that there was a plan to steal anything of value that was found, it is unlikely, and there is no evidence, that the criminals’ plans originally went so far as to formulate the methods of escape, disposal of the fruits of the crime, and/or concealment of the crime.
Once a substantive crime has been committed, a conspiracy should not be deemed to be still operative merely because some of the conspirators act in concert to avoid detection. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed.2d 790 (1949); State v. Darby, 123 Ariz. 368, 599 P.2d 821 (App.1979). We distinguish this from situations where conspirators make specific pre-planned efforts of escape, payment, concealment, or conversion of the fruits of the crime. See, e.g., State v. Cruz, 137 Ariz. 541, 672 P.2d 470 (1983); Crowell v. State, 15 Ariz. 66, 136 P. 279 (1913); State v. Kennedy, 122 Ariz. 22, 25, 592 P.2d 1288, 1291 (App. 1979); Atkins v. United States, 307 F.2d 937 (9th Cir.1962).
Garcia’s arrangements early that morning, giving appellant the television in exchange for appellant’s share of the sewing machine, appears to be the final act of the conspiracy — the division of the property. Although there remained the possibility that Garcia would eventually give appellant additional cash if appellant, after selling the television, found he had not gotten a fair “share” of the spoils, we think defining the conspiracy’s scope in terms of such an open-ended possibility would create the very kind of indefiniteness specifically warned against in Grunewald, supra, and Krulewitch, supra. Upon awaking and being shown the newspaper accounts of the murder, Garcia and Pain decided to get rid of the stolen property. We think this subsequent act amounted to unplanned-for “cover-up” activity which was not part of the original conspiracy. It was not until that time that the confrontation occurred and, as Rosemary testified, Pain told her appellant “hit her” with a “fierro.”
An agreement to conceal a completed crime does not extend the life of a conspiracy. United States v. Xheka, 704 F.2d 974 (7th Cir.1983). Thus we find the statement does not fall within the non-hearsay rule and its admission was error.
The evidence linking appellant with the murder came principally from Garcia, an accomplice, but even Garcia did not witness the murder. Pain invoked his Fifth Amendment right and did not testify. The admission of the hearsay statements of Pain through Rosemary Perez was evidence from the only eyewitness to the crime. Such evidence cannot be considered harmless under the circumstances presented by the case, and its admission constitutes reversible error.
EXCITED UTTERANCE
Since the case must be retried, we believe it necessary to consider appellant’s complaint that Garcia’s testimony about Pain’s statement at the scene should not have been admitted. Pain’s statement to Garcia (“he hit her”) falls within the hearsay exception for “excited utterances,” Rule 803(2), 17A A.R.S., Ariz. Rules of Evidence (Supp.1983). That provision allows admission of hearsay which is “[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” The three requirements for admission under the excited utterance exception are: (1) a startling event; (2) the statement must relate to the event; and (3) the statement must be spontaneous, i.e. soon enough after the event so as not *65 to give the declarant time to fabricate. State v. Jeffers, 135 Ariz. 404, 661 P.2d 1105 (1983); State v. Dale, 113 Ariz. 212, 550 P.2d 83 (1976); State v. Kevil, 111 Ariz. 240, 527 P.2d 285 (1974). Pain’s presence at an unanticipated murder (his presence is corroborated by fingerprint evidence) was a sufficiently startling event to meet the first requirement. The statement “he hit her” was obviously related to the event and fulfills the second requirement. Appellant complained at trial that a lack of spontaneity negating the third requirement could be inferred from Garcia’s testimony that Pain, after leaving the house, had had time to be “running all over” looking for him. This lack of excitement could, appellant argued, also be deduced from Pain’s behavior directly after the statement: he smoked a cigarette and unhurriedly, along with Garcia, went back to the house and loaded up the stolen property.
Lapse of time is only one factor, however. “The physical and emotional condition of the declarant is the important thing.” M. Udall & J. Livermore, 1 Law of Evidence, § 127, p. 270 (2d ed. 1982). If the totality of the circumstances indicates that the statement was not likely to be fabricated because of the effect of the startling event on the declarant, it will be admissible. State v. Barnes, 124 Ariz. 586, 606 P.2d 802 (1980) (statement made twenty minutes after event admissible), State v. Ritchey, 107 Ariz. 552, 490 P.2d 558 (1971) (statements of children, who are less likely to fabricate, made at least forty-five minutes after the event admissible), see also State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963), vacated on other grounds 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 (1964), appeal after remand 101 Ariz. 156, 416 P.2d 589 (1966) (statements by rape victim about an hour and a half after the incident were admissible).
Garcia testified that Pain was “excited,” “anxious,” and “worked ... up” and it is reasonable to believe he would have been. His smoking after the statement might well have been an attempt to calm down. Also, Pain’s actions on the following days — he got very sick each time the subject was discussed — indicated the effect the event continued to have on him. We find no abuse of sound discretion by the trial court, so the statement was properly admitted. State v. Dale, 113 Ariz. 212, 550 P.2d 83 (1976).
Appellant also argues that the admission of the statement, even if an excited utterance, violates his constitutional right of confrontation. U.S. Const, amend. VI, Ariz. Const, art. II, § 24. In Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the U.S. Supreme Court concluded that the Confrontation Clause requires, in addition to a threshold showing of unavailability of the hearsay declarant, adequate “indicia of reliability” of the statement, indicia which "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.” Id. at 66, 100 S.Ct. at 2539. We have since held that the excited utterance qualifies as such a firmly rooted hearsay exception which generally would qualify it for admission. State v. Jeffers, 135 Ariz. 404, 661 P.2d 1105 (1983). Pain would be considered an unavailable declarant by his invoking his Fifth Amendment right against self-incrimination at trial. The statement did not violate appellant’s right of confrontation.
The conviction on all counts is reversed, and the case is remanded for a new trial.
GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

 There need not be a conspiracy count in the indictment for the rule to apply. Such cases are frequently referred to as the "concert of action” or "joint venturer” exception. State v. Baumann, 125 Ariz. 404, 610 P.2d 38 (1980), J. Weinstein and M. Berger, 4 Weinstein’s Evidence ¶ 801(d)(2)(e)[01], p. 166-67 (1981).