DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Larry Moore has appealed from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} On May 12, 2005, Defendant-Appellant Larry Moore was indicted for aggravated robbery, in violation of R.C.2911.01(A)(1)/(A)(3), with a firearm specification. On May 26, 2005, a supplemental indictment was filed and Appellant was charged with murder, in violation of R.C. 2903.02(B); having weapons under disability, in violation of R.C.2923.13(A)(2)/(A)(3); tampering with evidence, in violation of R.C. 2921.12(A)(1); and felonious assault, in violation of R.C.2903.11(A)(1)/(A)(2). All four counts in the supplemental indictment included firearm specifications. Appellant entered not guilty pleas to all charges in the supplemental indictment, including the firearm specifications.
 {¶ 3} On June 17, 2005, the State filed a motion to consolidate Appellant's case with that of Mark Alston. On June 24, 2005, the trial court granted the State's motion to consolidate.
 {¶ 4} A jury trial commenced on June 27, 2005. On June 30, 2005, the jury returned its verdict and found Appellant guilty of all five charges and their corresponding firearm specifications. Appellant was subsequently sentenced to an aggregate term of 26 years to life incarceration. Appellant has timely appealed his convictions, asserting one assignment of error.
 II Assignment of Error
"THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS WHICH DID NOT MEET THE REQUIREMENTS OF OHIO EVIDENCE RULE 801(D)(2)(e), CONSTITUTING REVERSIBLE ERROR."
 {¶ 5} In his sole assignment of error, Appellant has asserted that the trial court erred when it admitted hearsay evidence. Specifically, Appellant has argued that the trial court improperly permitted testimony regarding the hearsay statements made by co-conspirators. This Court disagrees.
 {¶ 6} The trial court is afforded broad discretion in ruling on the admissibility of evidence, and its decision will not be overturned unless there is a clear abuse of discretion and material prejudice to the defendant. State v. Hymore (1967),9 Ohio St.2d 122, 128. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 7} Evid.R. 801(D)(2)(e) provides that an out of court statement is not hearsay and is admissible if it is offered against the party and is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Such a statement is "not admissible pursuant to Evid.R. 801(D)(2)(e) until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof." State v. Carter
(1995), 72 Ohio St.3d 545, paragraph three of the syllabus. However, the premature admission of such a statement is harmless error if the State subsequently supplies the requisite independent proof of a conspiracy. Id. at 550.
 {¶ 8} Upon review of the record, we find that the State made a prima facie showing of the existence of a conspiracy. Jermaine Stewart and Jeremiah Stewart, twin brothers, both testified that Appellant, Alston, and a third man, George Smith, were all present at a home owned by Yolanda Adams hours before Mark Riley, the victim, was murdered. The Stewart brothers indicated that the three went from room to room in the home having private discussions. Jermaine Powell, another individual present at the house, testified that he attempted to enter the basement while these conversations were occurring and was not permitted in the room. Jeremiah testified, without objection, about those conversations.
"Q. What was discussed next?
"A. It was a lick plan. * * * A robbery."
Jeremiah continued, noting that Appellant, Alston, and White all participated in the conversation planning the robbery.[1] Jeremiah noted that he was told that the target of their robbery was Riley. No objection was raised to this testimony.
 {¶ 9} The Stewarts continued their testimony noting as follows. Appellant, Alston, and Smith left together from Adams' house in a burgundy Ford Explorer. Jermaine testified that he refused to let Jeremiah leave with the men. Jermaine continued, noting that the three "were going to do something bad." Jermaine based his conclusion on the fact that he was only excluded from conversations when the men knew that he would not participate in the events they were planning. The brothers noted that the Explorer was distinct because of its color and the bullet holes in it. Later that evening, the brothers received a call from Smith, their cousin, requesting that they come pick him up. The brothers drove to an area near the Gyro House to pick up Smith. Upon arriving, Smith, Alston, and Appellant entered the vehicle. The brothers then drove to Cleveland where Appellant and Alston procured a hotel room and remained.
 {¶ 10} The State presented the following additional evidence of a conspiracy. Raymond Seagers testified as follows. He occasionally stays at the same residence as the victim, Mark Riley. On the night Riley was shot, Seagers took a cab to the house, intending to spend the night. Upon approaching the house, he noticed a burgundy Explorer was parked in front of the house. Seagers noted that the Explorer was running but that no one was inside it. Seagers then approached the house, but prior to entering he heard a loud popping noise. Seagers then proceeded inside and found Marla Taylor in a hysterical state, standing over the victim. Seagers instructed Taylor to call 911 and immediately left the residence. Upon leaving the residence, Seagers notice that the burgundy Explorer was gone.
 {¶ 11} Additionally, the State presented the testimony of Marla Taylor, the victim's girlfriend. Taylor was sleeping in the victim's house on the night in question and testified as follows. She was awakened by noise in the house. She then heard Riley talking to a man he referred to as Jo-Jo. It is undisputed that Jo-Jo is a nickname used by Appellant. A few moments later, Taylor saw Alston in the hallway of the home and later witnessed him take a cell phone from the bedroom of the home. Seconds after the men disappeared toward the kitchen, Taylor heard a gunshot. Taylor made her way to the kitchen and found Riley lying on the floor gasping for air and bleeding profusely. Taylor called 911 and the authorities arrived shortly thereafter.
 {¶ 12} The State also presented forensic testimony through multiple BCI employees. Through this testimony, the State established that both Appellant and Alston had gun shot residue on their hands when arrested. Further, Appellant could not be excluded as a source for the DNA located on the trigger of the gun which shot Riley.
 {¶ 13} In State v. Smith (2000), 87 Ohio St.3d 424, 434-435, the Ohio Supreme Court found that the State had made a prima facie showing of a conspiracy by relying on the following facts: the conspirators had previously threatened the victim; the conspirators bragged about having killed the victim; the conspirators were together at the scene of the crime on the night in question; and forensic evidence linked the conspirators to the crime. Id. Based upon the above testimony herein, the State met its burden of demonstrating a prima facie case of conspiracy. The State's testimony demonstrated the following: Appellant, Alston, and Smith were together on the night of Riley's death; the three discussed a plan to rob Riley while at Adams' house with Jeremiah Stewart; the vehicle the three were seen riding in was witnessed running and unoccupied just prior to the murder; the vehicle was no longer at the scene moments after the murder; Alston was seen in the home of the victim at the time of the murder; Appellant's nickname was spoken just prior to the murder; Appellant, Alston, and Smith were together immediately after the murder; Appellant, Alston, and Smith left the jurisdiction together immediately after the murder; and forensic evidence supported a finding that Appellant and Alston were in the victim's home. Accordingly, we find that the State met its burden of demonstrating a conspiracy. Appellant's challenge regarding the State's failure to meet its burden, therefore, lacks merit.
 {¶ 14} Additionally, Appellant has asserted that some of the statements that were admitted were outside the scope of the conspiracy and thus inadmissible. Specifically, Appellant has asserted that Smith's statements to the Stewart brothers were made after the conspiracy had ended. Initially, we note that Appellant never raised a specific objection in the trial court regarding the scope of the conspiracy. Accordingly, it is doubtful that he has preserved such an issue for review. Assuming arguendo that Appellant's generic "continuing objection" to the line of questioning regarding the co-conspirator's statements preserved the issue for review, we find that Appellant's claims lack merit.
 {¶ 15} In State v. Shelton (1977), 51 Ohio St.2d 68, vacated on other grounds (1978), 438 U.S. 909, the Ohio Supreme Court held as follows:
"[I]t is well recognized that the conspiracy does not necessarily end with the commission of the target crime. Thus, a subsequent declaration of a conspirator may be admissible against any co-conspirator if it was so proximate, in terms of time and place, as to be within the res gestae; if the conspirators were still concerned with the concealment of their criminal conduct of their identity[.]
"* * *
"The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication." (Internal quotations and citations omitted.) Id. at 72.
While Shelton was decided prior to the promulgation of Evid.R. 801(D)(2)(e), it has been consistently applied thereafter. See, e.g., State v. Swiger (July 17, 1991), 9th Dist. No. 14565, at *10; State v. Siller, 8th Dist. No. 80219, 2003-Ohio-1948, at ¶ 29.
 {¶ 16} We find the facts of Shelton to be analogous herein. In Shelton, an accomplice made a statement implicating the defendant while he, the accomplice, was trying to dispose of the murder weapon. Shelton, 51 Ohio St.2d at 73. Herein, George Smith, an accomplice, made statements implicating Appellant while he, Smith, was trying to conceal his own involvement in the murder. At the time those statements were made, Appellant and Alston were also attempting to conceal their involvement in the murder by hiding from the authorities in Cleveland. "So long as the participants continued to conceal their crimes, statements made in the interim were admissible." Swiger, supra, at *10. Accordingly, Appellant's assertion that Smith's statements fell outside the scope of the conspiracy lacks merit. Smith's statements were made while he, Appellant, and Alston were still attempting to conceal their involvement in the murder. Appellant's sole assignment of error, therefore, lacks merit.
 III {¶ 17} Appellant's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J., Moore, J., concur.
[1] As these statements were attributed to Appellant, they were properly admitted as an admission by party-opponent. Evid.R. 801(D)(2)(a). See State v. Young (July 18, 1997), 11th Dist. No. 95-P-0139, at *4-5.