[Cite as *State v. Cleavenger*, 2020-Ohio-1325.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-P-0031** |
| DERIC R. CLEAVENGER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2017 CR 01094.

Judgment: Affirmed in part, reversed in part, and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Seneca Konturas,* P.O. Box 662, Aurora, OH 44202 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Deric R. Cleavenger, appeals from the judgment of conviction, entered by the Portage County Court of Common Pleas, after trial by jury, on one count of rape and three counts of gross sexual imposition ("GSI"). Appellant challenges the trial court's admission of certain evidence as well as the sufficiency and weight of the evidence submitted by the state. For the reasons that follow, we affirm in part, reverse in part, and remand the matter for further proceedings.

{¶2} Appellant was originally indicted on two counts of rape (counts one and four), in violation of R.C. 2907.02(A)(1)(b), each felonies of the first degree; one count of rape (count five), in violation of R.C. 2907.02(A)(2), a felony of the first degree; and five counts of GSI (counts two, three, six, seven, and eight), in violation of R.C. 2907.05(A)(4), each felonies of the third degree. Appellant pleaded not guilty. The state ultimately moved to amend the indictment to dismiss counts one, two, three, and five. The trial court thereafter renumbered the remaining counts with count four appearing as count one; count six appearing as count two; count seven appearing as count three; and count eight appearing as count four. After a trial by jury, verdicts of guilty were returned on each of the renumbered counts. At sentencing, appellant was sentenced to nine years on amended count one, rape; and four years on each remaining GSI count. The trial court ordered the terms to be served consecutively with a mandatory five-year period of post-release control to follow. Appellant was also deemed a sexually-oriented offender and informed of his registration requirements.

{¶3} At trial, the evidence established the following: Appellant has three children, a step-daughter, Am. C. ("the victim"), a son, D.C., and a daughter An.C. All three children are the natural children of appellant's wife, C.C. When the victim was between the ages of 10 to 13 years old, i.e., between September 1996 and September 1999, the family lived together in a home in Ravenna, Ohio. Appellant and his wife had a bedroom on the first floor, D.C.'s bedroom was also on the first floor, while the two girls' bedrooms were on the second floor.

{¶4} The victim testified that, between 1996 and 1999 (when she was 10 through 13 years old), the appellant sexually abused her. The victim described at least

one occasion on which the appellant engaged in sexual conduct ("the insertion * * * of any part of the body * * * into the vaginal * * * opening of another," R.C. 2907.01(A)) with her, and at least three occasions on which he had sexual contact (the "touching of an erogenous zone of another * * * for the purpose of sexually arousing or gratifying either person," R.C. 2907.01(B)) with her.

{¶5} The victim disclosed the sexual abuse to her mother. In response, a "family meeting" was held between the victim, her mother, and appellant. The victim's mother emphasized the desire to keep the family together. Appellant admitted to the abuse, apologized, and promised it would not happen again. The victim was advised not to tell anyone at school because she would never see her mother or siblings again and the entire family would be torn apart. In effect, the family would be ruined. After the "meeting," the behavior leading to the original disclosure stopped. Appellant, however, gradually began getting into bed with the victim while she slept. The victim testified, on at least two occasions, she awoke with appellant next to her with her hand on his penis. When she expressed her disapproval and demanded appellant not place her hand in that area, he laughed and asserted she did it on her own. The victim testified that she disclosed this to her mother who became upset and accused the child of attempting to break up her marriage.

{¶6} The victim remained in the home until she was 18, when she moved out. Although appellant ceased abusing the child in the manner described above, she testified he had occasion to grab her butt and make crude or suggestive comments about her and her friends. Upon moving out, in 2007, the victim began to reflect on her life as a child; she asserted she had a breakdown due to the "suppressed memories

3

[that] came flooding back." She saw a counselor who recommended reporting the abuse. She subsequently went to the police and filed a report. A police officer, Detective Greg Francis, interviewed appellant and the victim's mother, each of whom denied everything, including the victim's disclosure of the abuse and the family meeting. The victim then went to her maternal grandmother and disclosed the abuse. Her grandmother advised her not to pursue the issue. Heartbroken, the victim penned a letter to the police in May 2008 explaining that she would like to "drop the case" against appellant. In April 2016, however, the victim, still struggling with the memories of abuse and the reaction of her family, contacted the police again. The case was reopened and, as a result of evidence obtained by the victim and gleaned from the ensuing police investigation, appellant was charged and eventually convicted. He now appeals, assigning four errors. His first provides:

{¶7} "The trial court erred in denying defense counsel's motion in limine, and subsequent renewal of the same at trial, regarding exclusion of the recording made by [Am.C.] of the March 25, 2016 conversation between [Am C.] and the victim's mother, C.C., where the recording was a violation of Evid.R. 403, 802."

{¶8} We first point out that defense counsel filed his motion in limine prior to trial and renewed his motion to exclude the recording prior to the victim's testimony. He did not do so, however, immediately prior to the recording being played to the jury. Although the renewed motion was not exactly timely, we conclude defense counsel's renewed motion was sufficient to preserve the issue for review.

{¶9} Pursuant to Evid.R. 801(D)(2)(e), statements are not hearsay if they are "offered against a party * * * by a co-conspirator of a party during the course and in

4

furtherance of the conspiracy upon independent proof of the conspiracy." The plain language of the rule indicates a co-conspirator's statement is admissible if: (1) there is a conspiracy; (2) the defendant participated in the conspiracy; (3) the declarant participated in the conspiracy; (4) the statement was made during the course of the conspiracy; and (5) the statement was in furtherance of the conspiracy. *State v. Dunson*, 2d Dist. Montgomery No. 25693, 2014-Ohio-234, ¶27, citing *State v. Milo*, 6 Ohio App.3d 19, 22 (10th Dist.1982).

{¶10} Appellant was on trial for one count of rape and three counts of GSI. The state sought admission of the audio recording to establish C.C. and appellant conspired to conceal evidence of the abuse that is at the heart of the charges. Appellant, however, was not charged with obstructing justice and thus, the alleged conspiracy to "cover up" the victim's disclosure is collateral to the underlying substantive charges. In this respect, the evidence required to establish the collateral conspiracy is fundamentally irrelevant to the issues for which appellant is being tried and highly prejudicial to appellant's defense to the substantive charges.

{¶11} We recognize that "a declaration of a conspirator, made subsequent to the actual commission of the crime, may be admissible against any co-conspirator if it was made while the conspirators were still concerned with the concealment of their criminal conduct or identity." *State v. Shelton*, 51 Ohio St.2d 68 (1977), paragraph two of the syllabus, vacated on other grounds in *Shelton v. Ohio*, 438 U.S. 909 (1978). The theory for the admission of evidence of the acts and declarations of a co-conspirator made after the crime charged has been committed is that "persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their

freedom from apprehension, as they were concerned, before the crime, with its commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication." *State v. DeRighter*, 145 Ohio St. 552, 558 (1945).

{¶12} The foregoing point of law, however, presuppose that the conspirators in question conspired to commit the underlying crime for which the defendant is being tried. There is no evidence to suggest C.C. planned, assisted with, or had any involvement in appellant's commission of the underlying crimes for which he was charged and tried. In other words, there was no evidence that C.C. conspired with appellant to either engage in rape or gross sexual imposition. Accordingly, the alleged conspiracy to conceal could not be used as evidence to further a conspiracy which simply did not exist or, at least, for which no evidence was presented.

{¶13} In *Goins v. State*, 46 Ohio St. 457 (1889), the Supreme Court of Ohio held:

{¶14} (a) On the trial of one of several defendants jointly indicted for an offense, the declarations of a co-defendant, made in the absence of the defendant on trial, in furtherance of the common purpose, are admissible when a prima facie case of conspiracy has been made. (b) To authorize the admission of such evidence, an express averment in the indictment of the fact of a conspiracy is not necessary. (c) Nor need the conspiracy be one to commit the identical offense charged in the indictment, or even a similar one; *it being enough that the offense charged in the indictment was one which might have been contemplated as a result of the conspiracy.* (Emphasis added.) *Id.* at paragraph four of the syllabus; cited with approval in *State v. Nevius*, 147 Ohio St. 263 (1947).

{¶15} Although both *Goins* and *Nevius* are 131 and 73-year-old cases, respectively, and they were decided well before the rules of evidence were enacted, they have not been abrogated or overruled. As such, the substantive legal conclusion

6

cited above is controlling in determining whether evidence of an alleged conspiracy is admissible.

{¶16} Here, the offenses charged, rape and GSI, were not contemplated as a result of any conspiracy between appellant and C.C.; to the contrary, if one were to believe a conspiracy existed between appellant and C.C., it occurred subsequent to the criminal acts for which appellant was on trial. Because there were no charges relating to a joint effort by appellant and C.C. to "cover up" the victim's allegations or otherwise conceal evidence, we conclude there was no conspiracy established that was relevant to the charges before the jury and, by necessary implication, there was no statement made in the course of or in furtherance of a charged crime or underlying conspiracy. The state, therefore failed to establish the existence of a conspiracy related to the charged crimes, a necessary condition for admission of the audio tape pursuant to Evid.R. 801(D)(2)(e). Under the circumstances, therefore, the trial court erred in admitting the recording as an admission of a co-conspirator. The recording was inadmissible hearsay and should have been excluded.

{¶17} Appellant's first assignment of error has merit.

{¶18} Appellant's second assignment of error provides:

{¶19} "The trial court erred in permitting the state to pursue a line of questioning regarding a polygraph exam taken by [Am. C.]"

{¶20} At issue under this assigned error is the admission of evidence that the victim passed a polygraph relating to her allegations. At trial, the victim's half-brother testified on appellant's behalf stating, in essence, the victim is a habitual liar. Over

7

objection, the trial court permitted the state to ask several questions relating to the results of the victim's polygraph test.

{¶21} Polygraph test results are generally inadmissible to prove an accused's guilt or innocence; they are likewise inadmissible for impeachment or enhancing credibility unless (1) the parties have stipulated their admissibility; (2) the court confirms the examiner's qualifications and test conditions; (3) the opposing party has had the opportunity to cross-examine the polygraph examiner; and (4) that the results do not tend to prove or disprove any element of the crime charged and the court must instruct the jury about the weight of the polygraph evidence. *State v. Rowe*, 68 Ohio App.3d 595,609-610 (10th Dist.1990), citing *State v. Souel*, 53 Ohio St.2d 123, 132 (1978).

{¶22} None of these requirements were met. As a result, the trial court erred in permitting the state to impeach the victim's brother with the results of the victim's polygraph examination.

{¶23} We must next assess the prejudicial impact of the erroneous admission. In *Rowe, supra*, the Tenth District set forth factors to determine whether testimony presented regarding a polygraph examination is prejudicial: "'(1) whether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted.'" *Rowe, supra*, at 611 quoting *People v. Rocha*, 110 Mich.App. 1, 9 (Mich.App.1981). Although decided in 1990, "[t]he *Rowe* test has been followed in more recent cases involving the improper admission of polygraph examination testimony during a criminal trial." *State v. Correa*,

8

7th Dist. Mahoning No. 13 MA 23, 2015-Ohio-3955, ¶43, citing *State v. Rojas,* 10th Dist. Franklin No. 11AP-683, 2012-Ohio-1967; *State v. Meares,* 5th Dist. Fairfield No. 10-CA-2, 2011-Ohio-43.

{¶24} Applying the *Rowe* factors, first defense counsel objected to the state's proposed use of the victim's polygraph test results during a sidebar where the state requested the court's permission to use the same. The court overruled the objection and, as a result, the court did not deem the admission problematic; the request for a curative instruction would only occur under such circumstances where a trial court agrees that evidence is improper. The court clearly did not believe the state's line of questioning was improper and thus it would not have been sensible for defense counsel to request a curative instruction.[1] After the sidebar and objection, the state proceeded to challenge the testimony of D.C., the victim's half-brother with the following line of questions:

{¶25} Q. And you just basically impugned your sister's entire life by calling her a liar, did I get that correct?

{¶26} A. Yes.

{¶27} Q. Would it change your opinion if I told you factually in this case in 2008 when she had brought the allegations to Detective Francis, were you aware that he took her to the State of Ohio polygraph

---

1. It bears noting that even when curative instructions are given, courts have held such an instruction could not undo the damage inflicted by the mention of the test. *State v. Doren*, 6th Dist. Wood No. WD-06-064, 2009-Ohio-1667, ¶134 ("While a jury is presumed to follow instructions * * * this jury demonstrated sustained curiosity about a polygraph test by submitting seven written questions despite the first curative instructions. It is unlikely that the second curative instruction removed the error's taint from the jurors' minds."); *State v. Bates*, 8th Dist. No. Cuyahoga No. 43904, 1982 WL 5268 (Apr.1, 1982) ("[T]he mere offer or refusal to undergo such test should also be excluded because unwarranted inferences are likely to be drawn as to defendant's guilt or innocence." The "'damage had been done,'" even though the state withdrew the questions and the court gave curative instructions."); *State v. Harris*, 1st Dist. Hamilton No. C–830927, 1984 WL 6987 (Oct.3.1984) (finding trial court erred in not granting mistrial because the case "turned upon the credibility of the witnesses. * * * [T]he introduction of the evidence concerning the victim's polygraph test was highly prejudicial * * * and no curative instruction could remove the harm that may have been done.")

examiner and she passed the polygraph exam when asked specifically - -

{¶28} A. I was aware of that.

{¶29} Q. - - about the sexual abuse? So you knew she passed the polygraph in regard to this?

{¶30} A. Yeah, a lot of people can pass a polygraph.

{¶31} Q. So it doesn't change your opinion?

{¶32} A. Not at all.

{¶33} Q. Even though she passed the polygraph on this specific question?

{¶34} A. Not at all.

{¶35} Clearly, the three references to the victim's passage of the examination were intentional and the references, by the prosecutor's very request to introduce the results, indicates he was attempting to bolster the victim's credibility. Finally, the repeated references during cross-examination were admitted with direct reference to the fact that the victim passed the test, not merely that she took the test.

{¶36} In *Harris, supra*, a case with similar facts to the instant mater, the mother of a child victim testified at the defendant's jury trial that her daughter had gone to the police station to take a polygraph examination and that charges then had been brought against the defendant. *Id.* at *3. Even though the trial court sustained defense counsel's objection and issued a curative instruction to the jury, the trial court refused to grant a mistrial. The First Appellate District reversed the defendant's rape conviction, determining that the case turned solely on witness credibility and that "[t]he clear implication of [the mother's testimony was] that the results of the polygraph test indicated that [the victim] was telling the truth about the crimes with which appellant was

10

charged." *Id.* at *7. It bears noting that, in *Harris*, the prosecutor did not specifically represent the victim passed the polygraph, but elicited testimony from the victim's mother that the victim took the test at the police station. Here, the prosecutor introduced the results to impeach brother's testimony *in order to* strengthen the victim's credibility. Our facts provide an arguably more compelling case of prejudice than the matter reversed by the First District in *Harris.*

{¶37} Prejudice should be also analyzed in relation to some of the salient reasons for avoiding the admission of such results. It is beyond cavil that, upon hearing the victim passed the polygraph, the jury realistically treated the evidence as persuasive on the issue of appellant's guilt without the opportunity to evaluate the potential pitfalls of the process, examiner, or machine. *See State v. Miller*, 5th Dist. Tuscarawas No. 86AP060038, 1987 WL 9876, *2 (Apr. 20, 1987) ("[T]he jury may place undue emphasis on the reliability and validity of such 'scientific' evidence, rendering the criminal trial essentially a trial by machine. * * * '[P]olygraph evidence * * * is likely to be shrouded with an aura of near infallibility, akin to the ancient oracle of Delphi[.]'" (Citation omitted)). In this respect, the admission was a one-sided and an unfair means of potentially shutting down the deliberation process before it commenced.

{¶38} Further, defense counsel was not given the chance to question the polygraph examiner on the reliability of his or her methodology (or whether there is a standardization on test procedure); Nor was counsel able test the examiner on his or her qualifications to conduct the examination or the reliability of the instrumentation itself. In light of these problems, and the concomitant difficulty for a jury to evaluate the "scientific conclusion," the jury could have easily seen the evidence as incontrovertible

11

proof of the victim's allegations. And, even if defense counsel had the opportunity to question the examiner, it is still easy to see why courts are loathe to admit such results absent, inter alia, mutual stipulation because, regardless of the foundation and exploration of the science behind the polygraph, it is unclear that any technique or instrument is sufficiently "acceptable" among scientists whose approval is a precondition to judicial recognition. It is therefore difficult to avoid the conclusion that the admission was fundamentally prejudicial to appellant's right to a fair trial.

{¶39} As discussed above, the polygraph evidence was clearly inadmissible. The implication of introducing the evidence is that the victim's allegations are essentially true, despite the battle of credibility. In the totality, we cannot conclude the prosecutor's repeated references, which necessarily bolstered the victim's credibility, were not prejudicial to appellant's defense. We therefore hold the trial court committed prejudicial error in allowing the state to introduce the results of the polygraph.

{¶40} Appellant's second assignment of error has merit.

{¶41} Appellant's third assignment of error provides:

{¶42} "The trial court erred in failing to grant defendant's motion for acquittal under Crim.R. 29, and for entering judgment on the verdict where it was not supported by sufficient evidence."

{¶43} Although we sustain appellant's first and second assignments of error, we must address appellant's sufficiency argument. If there is insufficient evidence to support a conviction, the remedy is reversal of the conviction with instructions to discharge the defendant. In short, no retrial is available. If, however, there is sufficient evidence, but there are trial errors meriting reversal, then retrial is the remedy.

12

{¶44} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle,* 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is whether, after viewing the evidence most favorably to the prosecution, the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶45} Appellant challenges his convictions for rape and GSI. A person is guilty of rape if he engages in sexual conduct with another, who is not the spouse of the offender, when "[t]he other person is less than thirteen years of age whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). Sexual conduct includes "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another." R.C. 2907.01(A). GSI occurs when a person has sexual contact with another who is not the spouse of the offender and "[t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4). Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶46} Appellant contends the state's case was entirely premised upon the testimony of the victim without any corroboration. He maintains, without citation to authority, that a sexual abuse prosecution cannot be based solely upon the testimony of a victim.

13

{¶47} With respect to appellant's assertion, sexual abuse cases are often "credibility contests" between a victim and a defendant. The victim's testimony regarding abuse provides "some evidence" that the alleged crimes occurred. Whether a jury believes this evidence is an issue of evidential weight, but does not negate its sufficiency.

{¶48} With this in mind, the victim testified she was under the age of 13 years old at the time of the incidents; to wit: she stated her birthday is September 27, 1986 and the conduct/contact was alleged to have occurred between September 27, 1996 and September 26, 1999. Some evidence was advanced that the victim was under the age of 13 when the incidents occurred.

{¶49} The victim also testified that, on multiple occasions, appellant entered her bed and try to "spoon" with her, during which times she could feel him, in an aroused state, touching her on her buttock; evidence that the victim's actions were for his sexual gratification. She testified that appellant rubbed her breasts and, on multiple occasions, rubbed her clitoris with his fingers. The victim also testified to an incident where appellant inserted his fingers into her vagina; after this, the victim alerted her mother and the three had the family meeting. Once she disclosed the abuse to her mother, the victim testified appellant did not enter her room as often; still, on at least two occasions, the victim awoke with appellant next to her and she testified he had placed her hand on his penis. The foregoing demonstrates the state presented sufficient evidence to prove, beyond a reasonable doubt, appellant committed one count of rape and at least three counts of GSI.

{¶50} Appellant's third assignment of error lacks merit.

14

{¶51} Appellant's fourth assignment of error challenges the manifest weight of the evidence. Given our disposition of appellant's first and second assignments of error, however, we conclude the fourth assigned error is overruled as moot.

{¶52} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded for a new trial.

THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.