DECISION
{¶ 1} Oliver L. Madison is appealing from the judgment of the trial court finding him guilty of eight charges of rape and one charge of kidnapping. He also appeals from the adjudication that he should be classified as a sexual predator. We affirm.
 {¶ 2} Oliver Madison was indicted on June 30, 2005. He was charged with the nine charges for which he was convicted. All the charges involve his interaction with one woman over a period of days. Mr. Madison claimed that his interaction with the woman *Page 2 
was all voluntary and consensual. The woman asserted that she had been raped and constrained against her will.
 {¶ 3} In September 2005, the State of Ohio and Oliver Madison agreed that both Mr. Madison and the woman should submit to a polygraph examination, commonly called a "lie detector" test. Both did submit to the test. The polygraph examiner concluded that Mr. Madison was being deceptive when he asserted that he had not raped the woman. During the time when Mr. Madison was in the presence of the polygraph examiner he made statements which were deemed incriminating. Because of the stipulations of the parties, the results of the polygraph test of Mr. Madison were admitted into evidence. After litigating a motion to suppress, the trial court also admitted Mr. Madison's statements into evidence.
 {¶ 4} After the presentation of evidence, a jury found Mr. Madison guilty of all the charges against him. He was sentenced to 9 years of incarceration and adjudicated to be a sexual predator.
 {¶ 5} Mr. Madison asserts a total of 12 assignments of error on appeal:
 First Assignment of Error: The court erroneously overruled appellant's motion to suppress any and all statements made when appellant was not connected to the polygraph apparatus; as such statements were not within the scope of the stipulation entered into by the parties.
 Second Assignment of Error: The court erroneously failed to instruct the jury that a polygraph examiner's testimony does not tend to prove or disprove any element of a crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given. *Page 3 
 Third Assignment of Error: The court erroneously overruled a defense motion seeking psychiatric and substance abuse assessment of the prosecuting witness.
 Fourth Assignment of Error: Appellant received ineffective assistance of counsel by virtue of counsel's failure to object to the omission of a required special instruction concerning how the jury could consider testimony concerning polygraph results, and for counsel's failure to more aggressively pursue the motion seeking evaluation of the prosecuting witness.
 Fifth Assignment of Error: The court improperly conducted a sex offender classification hearing without providing the required advance notice to appellant, or obtaining his waiver of notice.
 Sixth Assignment of Error: The court failed to afford appellant procedural due process at the sexual offender classification hearing by conducting the hearing in accordance with statutory requirements.
 Seventh Assignment of Error: The trial court denied appellant his right to confrontation by basing its adjudication at least in part on the contents of the presentence investigation without that report being shown to appellant and without that report being admitted into evidence.
 Eighth Assignment of Error: Counsel's unprofessional omissions in relation to the sexual offender classification hearing rendered appellant ineffective assistance of counsel.
 Ninth Assignment of Error: The evidence before the court was legally insufficient to establish that appellant was a sexual predator, subject to the lifetime registration and community notification provisions of Chapter 2950 of the Ohio Revised Code.
 Tenth Assignment of Error: The evidence was legally insufficient to establish the elements of rape and kidnapping.
 Eleventh Assignment of Error: The court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29. *Page 4 
Twelfth Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
 {¶ 6} In the first assignment of error, counsel for Mr. Madison asserts that various admissions made by Mr. Madison while he was at the headquarters of the Ohio State Highway Patrol for his polygraph examination should not have been admitted into evidence. Mr. Madison stated that he had oral and anal sex with [J.H.] and that during the oral sex [J.H.] wanted to stop and smoke more crack, but Mr. Madison did not stop. Mr. Madison claimed he held a box cutter to J.H.'s throat, but did so during an argument about drugs, not to encourage or force her to have sex with him. He stated that he told J.H. to go into a closet and be quiet, but that she was in the closet for less than a minute. Mr. Madison also acknowledged that he had J.H. lie on the floor with her hands and feet tied together, following which they had sexual relations. Mr. Madison also indicated that J.H. performed oral sex on him while tied up with a rope.
 {¶ 7} Obviously these statements had the effect of undercutting Mr. Madison's assertion that all the sexual relations were voluntary. If the trial court erred in admitting the statements, the error was prejudicial. However, the trial court did not err.
 {¶ 8} A polygraph examination routinely involves an interview of the person to be tested. This interview serves a number of purposes. The person being tested is made more at ease with the examiner and the various bodily functions which are measured by the polygraph machine can stabilize so the examiner eventually has a base line from which to gauge truthfulness or deception. Also, certain topics which can be expected to elicit physical responses when first mentioned have been mentioned so the initial response has come and gone when a person such as Oliver Madison agrees to submit to *Page 5 
a polygraph examination. The first paragraph of the "Entry of Stipulation of Use of Polygraph" reads:
 The Defendant and J.H. will submit to an examination process utilizing in part a device commonly known as a "polygraph" or "lie detector" which examination process may involve a series of interviews and tests employing such device.
 {¶ 9} Mr. Madison, by signing the entry of stipulation, was on notice that he would be interviewed by law enforcement personnel and the results of the interviews could be used against him. Although counsel for Mr. Madison argues that only statements made while Mr. Madison was fully wired for the actual physiological reactions were admissible, the stipulation includes a series of interviews. The construction of the entry of stipulation argued on Mr. Madison's behalf is forced at best and does not reflect the reality of the polygraph testing procedure as commonly known and understood in the criminal justice system.
 {¶ 10} The first assignment of error is overruled.
 {¶ 11} In the second assignment of error, counsel for Mr. Madison questions the charge given to the jury on the law regarding the subject of testimony related to a polygraph examination. Specifically, counsel objects to the failure of the trial court to charge in accord with paragraph four of the syllabus of State v. Souel (1978),53 Ohio St.2d 123, which reads:
 If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given. *Page 6 
 {¶ 12} The State has noted in response that defense counsel failed to object as to the charge to the jury on the subject, so we are to analyze this issue under a "plain error" standard. See Crim.R. 52(B).
 {¶ 13} We cannot say that plain error occurred, especially in light of the following statement to the jury as set forth at page 406 of the transcript:
 THE COURT: Let me interject here a minute. The only thing this expert is testifying about is whether the defendant was deceptive or not in answering the polygraph. It has the answer is I'll tell you it's no, it doesn't mean he is guilty or not guilty. It's just is a piece of evidence that you can consider with all of the evidence. That's just one piece of the evidence. If we were going to say that he is qualified to say, well, he punched his wife, he is guilty. It's over. But that's not true. That's why we have a jury. This is only one piece of evidence. The only thing he is qualified to do is to say he was deceptive or not, period. That's all he is here for.
 {¶ 14} The distinction between affirmative evidence of guilt and evidence which says the defendant is lying when he says he did not rape J.H. is a very fine distinction in the mind of an average person. The distinction is so fine that we cannot say the jury's verdict would have been different had the charge required by Souel, idem., been given.
 {¶ 15} In addition, the trial court gave the jury an instruction on expert testimony as follows:
 Generally, a witness may not express an opinion. However, one engaged in a particular profession may express an opinion because of their education, knowledge, and experience. Such testimony is admitted for whatever assistance it may provide to help you to arrive at a just verdict.
 You must decide what weight, if any, should be given to the testimony of an expert. In determining its weight, you may consider the expert's skill, experience, knowledge, veracity, familiarity with the facts of this case, and the usual rules for *Page 7 
testing credibility and determining the weight to be given to the testimony.
 Hypothetical questions which instructed the expert to assume that certain facts were true and to give an opinion based upon such assumption have been asked. You must determine whether the assumed facts upon which the expert based his opinion, are true. If any assumed fact was not established, you will determine its effect upon the opinion of the expert.
(Tr. 670-671.)
 {¶ 16} When we look at the trial court's statement to the jury and the instruction given as to expert testimony, the omission of theSouel instruction was not plain error.
 {¶ 17} The second assignment of error is overruled.
 {¶ 18} In the third assignment of error, counsel for Mr. Madison questions the refusal of the trial court to require J.H. to undergo a psychiatric examination prior to her testimony in the State's case-in-chief. The trial judge reviewed the motion and called J.H. to the witness stand to ask her questions to determine if she was competent to testify.
 {¶ 19} Competency determinations of the trial court will not be disturbed on appeal unless the trial court abused its discretion.State v. Clark (1994), 71 Ohio St.3d 466, 469. Evid.R. 601 states:
 Every person is competent to be a witness except:
 (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.
 {¶ 20} Being of unsound mind does not automatically render a witness incompetent to testify. A person who is able to correctly state matters which have come within her perception with respect to the issues involved and appreciates and *Page 8 
understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind. State v. Bradley (1989),42 Ohio St.3d 136, 141.
 {¶ 21} In State v. Sanders, Cuyahoga App. No. 86405, 2006-Ohio-809, the victim and only eyewitness had been diagnosed with mild mental retardation. The trial court ruled that he was competent to testify, and he was able to perceive, recollect, and relate facts truthfully, although he was unable to recall some of the incident. The court of appeals affirmed, noting that imperfect recollection goes to the credibility of a witness; it does not, in itself, render a witness incompetent.
 {¶ 22} In State v. Grahek, Cuyahoga App. No. 81443, 2003-Ohio-2650, the court of appeals ruled that although the victim had an I.Q. of 67 and could not recall the frequency of the alleged rapes or the years when the rapes occurred (victim was age 12 to 14 at the time of the offenses and age 18 at the time of trial), the victim was able to recall details of the incidents including the defendant's statements and actions, and the locations where the alleged rapes occurred.
 {¶ 23} Here, J.H. described herself as bipolar, for which she had been getting mental health treatment and assistance for many years. She described her mental health condition as much improved over the 14 years she had been getting treatment. J.H. described a typical day in her life and claimed no memory difficulties. She named her medication and said that she understood that as long as she took it, she was fine.
 {¶ 24} J.H. acknowledged a history of crack cocaine use, but denied current use of the drug. She indicated that she met with a physician every two weeks. J.H. denied current usage of any mind altering drugs. *Page 9 
 {¶ 25} Based upon her demeanor and her answers, the trial court overruled the motion for a mental health examination. A history of mental health problems or a history of drug abuse does not, in and of itself, render a person incompetent to testify. The trial court was clearly correct in its ruling.
 {¶ 26} The third assignment of error is overruled.
 {¶ 27} In the fourth assignment of error, counsel asserts that trial counsel rendered ineffective assistance of counsel when trial counsel failed to object to the trial court's charge to the jury on the purposes of testimony about a polygraph testimony. The standard for assessing whether counsel has rendered effective assistance is set forth inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. The Supreme Court of the United States held that counsel's performance must be shown to have been deficient and the deficiency prejudiced the defense to the point that the defendant was deprived of a fair trial. In addition, a defendant asserting that he has been deprived of effective assistance of counsel must demonstrate that, but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. Mr. Madison simply has not met the requirements that he was deprived of a fair trial and that, but for counsel's failure to object to the jury charge, the outcome would have been different. As discussed in connection with assignment of error two, the failure to object to the lack of a specific polygraph instruction was not likely to affect the outcome of the trial, particularly in light of the limiting instruction and the expert witness instruction given to the jury.
 {¶ 28} The fourth assignment of error is overruled. *Page 10 
 {¶ 29} The fifth, sixth, seventh, eighth and ninth assignments of error all address issues related to the hearing on Mr. Madison's classification as a sexual predator. Because of the overlap in these issues, they will all be addressed together.
 {¶ 30} A sentencing hearing was scheduled for almost two months after the jury returned its verdicts. Counsel for Mr. Madison, as an experienced criminal defense lawyer, had to know that part of the proceedings that day was a determination of whether or not Mr. Madison should be classified as a sexual predator. See R.C. 2950.09(B)(2). Counsel argued the only issue available, namely that Mr. Madison had not really restrained J.H. for days on end and raped her repeatedly. The severity of the crimes left little choice to the trial judge.
 {¶ 31} This court has addressed the issue of mandatory notice of sexual predator proceedings in State v. Wheeler, Franklin App. No. 03AP-832, 2004-Ohio-4891. In Wheeler, one of the issues on appeal was whether the failure of the defendant to receive prior notice of his sexual predator hearing, as required by R.C. 2950.09(B)(2), was reversible error. We determined that although failure to provide notice can be reversible error, it is not reversible error under all circumstances. Additionally, because sexual predator determinations are civil in nature, we review waiver-of-notice cases under the civil plain error standard.
 {¶ 32} As in Wheeler, the facts of this case do not substantiate any error resulting from the lack of notice. Obviously, the better course is to send formal notice to counsel and assume counsel will notify the client. However, neither counsel nor client objected to the lack of formalities. The attention of both was on the question of how much prison time *Page 11 
Mr. Madison was to receive for his conviction for eight charges of rape and one charge of kidnapping.
 {¶ 33} Under the circumstances, we cannot find prejudicial error from either the failure of formal notice or the failure of counsel to present additional testimony. The fifth, sixth and eighth assignments of error are overruled.
 {¶ 34} The seventh assignment of error alleges that the proceedings denied Mr. Madison the right of confrontation by using a presentence investigation as part of the evidence at the sexual predator classification hearing. The ninth assignment of error alleges that the evidence was legally insufficient to prove Mr. Madison is a sexual predator. Both of these assignments of error are impacted by the recent case from the Supreme Court of Ohio titled State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202. The syllabus for the Wilson case reads:
 Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence.
 {¶ 35} Applying this criterion to the evidence before the trial court, competent credible evidence supported the finding that Oliver Madison should be classified as a sexual predator. He restrained J.H. for days and forced her to submit to a wide range of sex acts, including vaginal intercourse, anal intercourse and forced fellatio.
 {¶ 36} The ninth assignment of error is overruled. *Page 12 
 {¶ 37} If the proceedings to determine sex-offender classification under R.C. Chapter 2950 are civil in nature, then the right of confrontation does not apply. The right of confrontation applies to criminal trials and proceedings.
 {¶ 38} The seventh assignment of error is overruled.
 {¶ 39} The tenth, eleventh and twelfth assignments of error will also be addressed together because all three assignments of error involve analysis of the evidence presented at trial under both the sufficiency of the evidence standard and the manifest weight standard.
 {¶ 40} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386.
 {¶ 41} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio set forth the role of an appellate court in reviewing a challenge to the sufficiency of the evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus.
 {¶ 42} In contrast, a claim that a verdict is against the manifest weight of the evidence requires a different review. The weight of the evidence concerns the inclination *Page 13 
of the greater amount of credible evidence offered to support one side of the issue rather than the other. State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. In analyzing a manifest weight argument, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 43} In reviewing a conviction under a manifest weight standard, the appellate court must act as a thirteenth juror, giving great deference to the fact finder's determination of the witnesses' credibility.State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 44} A Crim.R. 29 motion is a motion which raises the question of the sufficiency of the evidence at different stages of the trial. Thus, the analysis is similar to that conducted when the sufficiency of the evidence is raised on appeal.
 {¶ 45} J.H. testified about a wide range of sexual conduct in which she was forced to engage. Under her version of the facts, she was raped repeatedly. Mr. Madison himself made statements which reinforced parts of her version of the facts. She was tied up. She was forced into a closet. She performed fellatio while tied up. Clearly her *Page 14 
version of what happened was sufficient to support the multiple charges of rape and the charge of kidnapping.
 {¶ 46} Weighing the evidence results in the same outcome. J.H. was clearly battered and bruised when she was examined at the hospital after the rape. She suffered from a tear of her anus from the anal intercourse. We cannot find that Oliver Madison's version of the facts was the accurate version of what happened. The convictions are in accord with the weight of the evidence.
 {¶ 47} The tenth, eleventh and twelfth assignments of error are overruled.
 {¶ 48} All assignments of error having been overruled, the judgment and sentence of the Franklin County Court of Common Pleas are affirmed.
Judgment affirmed.
 FRENCH and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 1