[Cite as *State v. Stacy*, 2023-Ohio-3942.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2022-P-0068** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ROBERT D. STACY, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 00871 |

**O P I N I O N**

Decided: October 30, 2023
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Wesley A. Johnston*, 203 North Broadway Street, P.O. Box 277, Medina, OH 44258 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Robert D. Stacy, appeals his conviction and sentences for Violating a Protection Order and two contempt citations. For the following reasons, Stacy's conviction and sentences are affirmed.

{¶2} On October 4, 2022, Stacy was tried on a single charge of Violating a Protection Order, a felony of the fifth degree in violation of R.C. 2919.27, before a jury in the Portage County Court of Common Pleas. The following relevant testimony was given at trial:

{¶3} Crystal Church testified that she was in a relationship with Stacy for about ten years. Because of the abusive nature of that relationship, Church obtained a five-year protection order against Stacy in 2020, prohibiting him from being present at her residence on Hill Street in Ravenna.

{¶4} On June 8, 2022, at about 11:00 p.m., Church was on her front porch when Stacy rode up the driveway on a bicycle with a bookbag and asked to be let inside to change his clothes because he was soaking wet from rain. Church told him "no" and "to leave," and that she was calling the police because he was not supposed to be there. Stacy begged to be let inside. Church told him that, if he did not leave, she would call the police. She then went inside and called the Sheriff's Department.

{¶5} Church admitted on cross-examination that Stacy had been at her residence about two weeks prior to the June 8 incident. On that occasion he asked for water. Church threw a water bottle out a window to him and asked him to leave, which he did. She did not report the incident to law enforcement. Church was asked about another occasion on which she allowed Stacy to get high on her porch but she denied this happened.

{¶6} Church testified to further incidents in 2018 and 2021 where Stacy was on her property in violation of the protection order and on which occasions his conduct was reported to law enforcement.

{¶7} Taylor Youngblood, the supervisor for the domestic relations clerk's office in Portage County, identified the Order of Protection issued on August 20, 2020, in Case No. 2020 DR 00258. Inter alia, the Order provided that Stacy "shall not enter or interfere with [Church's] residence"; "shall stay away from [Church] * * * and not be present within

2

500 feet [of her]"; and "shall not initiate or have any contact with [her]." The terms of the Order were effective through June 26, 2025.

{¶8}    Deputy Sheriff Eric Noall testified that, on June 8, 2022, he responded to a 911 call from Church's residence. He searched the property for Stacy but did not locate him. Noall found a bicycle in the driveway and a bookbag containing men's clothing on the rear porch.

{¶9}    Stacy testified on his own behalf that the State could not prove anything that Church alleged and that she is full of lies and deceit. Based on proceedings in another judge's courtroom, Stacy "thought that the protection order was removed that day in court." On cross-examination, Stacy admitted leaving a rose on the front porch of Church's residence in late May 2022. Stacy also admitted that, in 2021, he was convicted of violating the protection order as well as breaking and entering. It was on this occasion that Stacy "could have swore that [they] had removed the protection order because [he] was making a stink about it back then."

{¶10}   The jury returned a verdict of guilty.

{¶11}   On October 7, 2022, the sentencing hearing was held. Stacy asserted that he felt neither guilty nor remorseful. The following occurred during the hearing:

> The Court:    When did you go to prison? I'm trying to -- I know I saw this. On which offense did you go to prison for? Do you remember? I'll find it.
>
> Stacy:        Ma'am, it's one F-5, will you sentence me? Give me another number or something. I got nine months left on one F-5. Come on, let's go. Next person. I'm here on bullshit.
>
> Deputy:       All right, Stacy, that's enough.
>
> The Court:    All right, you know what --

3

Stacy:      What are you gonna do, kick me out of court?

The Court:   No, I'm holding you in contempt of court.

Stacy:      I don't care about that either.

The Court:   I know you don't.  You don't care about anything.

Stacy:      I don't care about nothing right now.  Take me back down, take me back to jail.  Are you going to sentence me or not?

The Court:   In reference to this case * * * the court hereby sentences you to eleven months in ODRC and up to two years of discretionary post release control.  Additionally, the court will give you credit for time spent in the Portage County Jail.  And for your most recent outburst, the court's going to order you in direct contempt of court.  Do you want to say anything before I sentence you?

Stacy:      Thank you for sentencing me on the other stuff, Your Honor.

The Court:   Okay.  And the court now is going to sentence you to thirty days in the Portage County Jail to be served consecutively with your prison term.  So when you're done serving your prison term, we're going to bring you back to Portage and you're going to do another thirty days for your disrespectful conduct in court.

Stacy:      Thank you, Your Honor.

The Court:   You're very welcome.  Now, you have the right to appeal your verdict in this case.  If you cannot afford documents, the court will provide those documents to you without any cost.  If you cannot afford to hire an attorney to file a notice of appeal, the court will provide you with court-appointed counsel to file a notice of appeal.  Do you have the funds in which to appeal your conviction?

Stacy:      Am I done being sentenced yet?

The Court:   You trying for another contempt?  Do you have the funds to hire an attorney?

Stacy:      I'm not talking to you.

The Court:   Okay.  The court for that outburst I'm going to give you another thirty days consecutive to the thirty days I already gave you.

4

Why don't you just take him out of here. We're tired of looking at him.

Stacy: Have a good day and God bless you.

{¶12} On October 12, 2022, the trial court issued an Order and Journal Entry memorializing Stacy's sentence.

{¶13} On November 14, 2022, a Notice of Appeal was filed on Stacy's behalf. On appeal, the following assignments of error are raised:

[1.] Did the trial court commit a reversible error when it found Mr. Stacy guilty of Violation of Protective Order.

[2.] Stacy's convictions [sic] were against the manifest weight of the evidence in violation of the due process clause of the Constitution (Clause XIV, Section 1, United States Constitution).

[3.] The trial court's imposition of 11-month prison sentence was excessive and finding of two separate and subsequent imposition of 30 days [sic], each to be served consecutively to each other and consecutively to the prison term, was improper.

{¶14} A challenge to the sufficiency of the evidence raises the issue of "whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶15} In contrast to sufficiency, "weight of the evidence addresses the evidence's effect of inducing belief." (Citation omitted.) *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in

5

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶16} In order to convict Stacy of Violating a Protection Order, the State was required to prove beyond a reasonable doubt that he "recklessly violate[d] the terms of * * * [a] protection order issued * * * pursuant to * * * 3113.31 of the Revised Code." R.C. 2919.27(A)(1). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶17} That sufficient evidence existed to convict Stacy of Violating a Protection Order is beyond contention. Church testified to Stacy's presence on her property asking to enter her home on June 8, 2022, in violation of the terms of a protection order issued pursuant to R.C. 3113.31 and valid until June 2025.

{¶18} With respect to the weight of the evidence, Stacy has two arguments. First, he denies that he was at Church's residence on June 8. Here, it is simply a matter of whether to credit Church's testimony or Stacy's testimony (since, as Stacy notes, there was no other evidence connecting him to the bicycle or bookbag). The jury chose to credit Church's testimony and we find no compelling reason to hold otherwise. Although Stacy denied being on her property on June 8, he freely admitted to being there on other occasions so that his presence there on June 8 would be neither implausible nor unlikely.

{¶19} Stacy also claimed that he believed the protection order had been removed, a belief bolstered by Church's failure to contact law enforcement on prior occasions, thus negating the element that he acted recklessly with respect to the existence of a protection

6

order. Stacy's argument is unconvincing. Stacy's reason for believing the protection order had been removed was that he made "a stink" about it at the time he was being prosecuted for violating it. Complaining about or protesting the terms of a protection order is not a reasonable basis for believing the order has been removed, nor is being prosecuted for violating it. Applied to the present case, reckless means Stacy disregarded a substantial and unjustifiable risk that the protection order was likely in effect, i.e., there was "merely good reason" to believe that it was in effect. 1973 Note, R.C. 2901.22. The protection order was issued by the domestic relations court and Stacy received nothing from that court indicating that it had been removed. Given these circumstances, the verdict that Stacy acted recklessly with respect to the existence of the protection order is sound. *State v. Salazar*, 6th Dist. Sandusky No. S-06-020, 2007-Ohio-196, ¶ 20 ("appellant's violation of the same order one year earlier which resulted in appellant serving a term of incarceration should have served as an effective reminder of the validity of the protection order between the parties").

{¶20} The first two assignments of error are without merit.

{¶21} Stacy raises several arguments under the third assignment of error. The first is that his eleven-month sentence for Violating a Protection Order is excessive.

{¶22} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence * * * if it clearly and convincingly finds * * * [t]hat the sentence is * * * contrary to law." R.C. 2953.08(G)(2)(b). Presently in Ohio, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are [not] required to make findings or give their reasons for imposing

7

maximum * * * or more than the minimum sentences." (Citation omitted.) *State v. Vieira*, 11th Dist. Lake No. 2021-L-110, 2022-Ohio-1636, ¶ 12.

{¶23} Stacy's eleven-month sentence is within the statutory range of permissible sentences for a felony of the fifth degree. R.C. 2929.14(A)(5) ("[f]or a felony of the fifth degree, the prison term shall be a definite term of six, seven, eight, nine, ten, eleven, or twelve months"). The sentence is neither excessive nor otherwise contrary to law.

{¶24} Stacy also maintains that "the finding of both contempt's [sic] were unjustified and the sentences were improper." Brief of Appellant at 11.

{¶25} "Contempt of court is defined," inter alia, as "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Id.* at paragraph two of the syllabus.

{¶26} "A direct contempt is one committed in the presence of or so near the court as to obstruct the due and orderly administration of justice, and punishment therefore may be imposed summarily without the filing of charges or the issuance of process." (Citation omitted.) *State ex rel. Johnson v. Cty. Court of Perry Cty.*, 25 Ohio St.3d 53, 57, 495 N.E.2d 16 (1986); R.C. 2705.01 ("[a] court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of the court or judge as to obstruct the administration of justice"); *Disciplinary Counsel v. Repp*, 165 Ohio St.3d 582, 2021-Ohio-3923, 180 N.E.3d 1128, ¶ 28 ("judicial officers have the inherent authority to summarily

8

punish a person for direct contempt to secure the effective administration of justice and the dignity of the court").

{¶27} "Because of the summary nature of punishment for a direct-contempt conviction, the obstruction must pose an imminent threat to the administration of justice; it is not even enough that the obstruction poses a likely or probable threat." *Disciplinary Counsel v. Bachman*, 163 Ohio St.3d 195, 2020-Ohio-6732, 168 N.E.3d 1178, ¶ 24. "The record must demonstrate that the contemnor had an intent to obstruct the administration of justice or disobey an order of the court." (Citation omitted.) *Id.* Moreover, "[t]rial courts * * * must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Id.*, quoting *Brown v. United States*, 356 U.S. 148, 153, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

{¶28} Contempt proceedings are reviewed under an abuse of discretion standard. *State v. Puleo*, 11th Dist. Lake No. 2021-L-131, 2022-Ohio-4040, ¶ 8; *State v. Kilbane*, 61 Ohio St.2d 201, 400 N.E.2d 386 (1980), paragraph one of the syllabus ("[c]ourts, in their sound discretion, have the power to determine the kind and character of conduct which constitutes direct contempt of court"); *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988) ("since the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge").

{¶29} Stacy contends that neither of the instances for which he was found in contempt "rise to the level of misbehavior that obstructs the administration of justice." Brief of Appellant at 11. We disagree.

9

Case No. 2022-P-0068

**{¶30}** Stacy's conduct during sentencing was not merely disrespectful but was uncooperative so as to frustrate the trial court's ability to conduct a proper sentencing hearing. In the first instance the court was attempting to assess Stacy's criminal history. The court inquired of Stacy about a prior charge for which he had served time and he responded that she should just give him a sentence because the proceedings were "bullshit" and because he did not care. Similarly in the second instance, the court inquired of Stacy whether he could afford an attorney for appeal. Stacy was nonresponsive, again expressing his impatience with the proceedings. The court duly warned Stacy that he could be found in contempt a second time and repeated the inquiry. Stacy's response was that he would not speak with the court. *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 1 ("[i]f a defendant's outburst or other courtroom misbehavior causes a significant disruption that obstructs the administration of justice, that behavior may be punishable as contempt of court"); *State v. Hudson*, 7th Dist. Mahoning No. 10 MA 157, 2011-Ohio-6424, ¶ 69 ("the trial court did not abuse its discretion in finding Tareshawty in direct contempt for interrupting the court twice, even after being warned to stop; this necessitated a summary sanction to prevent continued disruptions and vindicate the trial court's authority"); *State v. Dumas*, 7th Dist. Mahoning No. 10-MA-50, 2011-Ohio-1003, ¶ 46 ("[a]ppellant's contemptuous comments ['[a]ppellant basically told the court that what it said did not matter'] established an imminent threat to the administration of justice so that immediate punishment was required to prevent demoralization of the court's authority").

**{¶31}** With respect to the sentences imposed for contempt, Stacy argues that "Ohio's criminal sentencing statutes do not authorize a trial court to impose or increase a

10

defendant's sentence merely because Defendant has an outburst or expressed himself in a profane of offensive manner." Brief of Appellant at 10, citing *Bryant*. As noted in the preceding paragraph, *Bryant* supports the position that an outburst is punishable as contempt when it "causes a significant disruption that obstructs the administration of justice." Here, Stacy's outbursts disrupted the trial court's efforts to conduct the sentencing hearing. The effect of these disruptions was aggravated by the fact that Stacy was acting pro se and so his behavior was not mitigated by having responsible counsel present on his behalf.

{¶32} As to the length of his sentences, we note that the statutory penalties for a first offense for civil contempt include "a definite term of imprisonment of not more than thirty days." R.C. 2705.05(A)(1); *compare* (A)(2) ("[f]or a second offense * * * a definite term of imprisonment of not more than sixty days in jail"). While it is "acknowledged that the sentencing limits within R.C. 2705.05(A) do not apply to direct contempt violations[,] * * * it is also clear that R.C. 2705.05(A) is to be considered as a guideline for the court when punishing a contemptor." *State ex rel. Yost v. Crossridge, Inc.*, 2022-Ohio-1455, 188 N.E.3d 629, ¶ 38 (7th Dist.); *State v. Hudson* 7th Dist. Mahoning No. 10 MA 157, 2011-Ohio-6424, ¶ 65 ("this court has found that these limits [in R.C. 2705.05(A)(1)] can be used as a 'guide' for reasonable sanctions for direct contempt"); *State v. King*, 8th Dist. Cuyahoga No. 80958, 2002-Ohio-7228, ¶ 12 ("[a]lthough the court is not bound by the sentencing scheme in R.C. 2705.05(A), that code section sets limits on punishments that the General Assembly has deemed to be reasonable"). We find no abuse of discretion with respect to Stacy's contempt citations.

{¶33} The third assignment of error is without merit.

11

{¶34} For the foregoing reasons, Stacy's conviction and sentence for Violating a Protection Order and two contempt citations are affirmed. Costs to be taxed against appellant.


JOHN J. EKLUND, P.J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2022-P-0068