[Cite as *State v. Nitso*, 2024-Ohio-790.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-T-0025** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| KENNETH NITSO, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 00569 |

## O P I N I O N

Decided: March 4, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W. Warren, OH 44481 (For Plaintiff-Appellee).

*Edward M. Heindel*, 2200 Terminal Tower, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Appellant, Kenneth Nitso, appeals his convictions from the Trumbull County Court of Common Pleas for gross sexual imposition, rape, and compelling prostitution. For the following reasons, we affirm.

{¶2} On July 22, 2022, the Trumbull County Grand Jury returned a 14-count indictment charging appellant with: eight counts of gross sexual imposition, five counts of rape, and one count of compelling prostitution. The following facts were presented at the jury trial held on February 27, 2023.

{¶3}    R.N. is appellant's biological daughter. At the time of trial, R.N. was 13 years old. R.N. confided in her brother, J.D., that appellant was sexually abusing her. J.D. revealed the information to Laura Revetti ("Revetti"), a school supervisor. At trial, Revetti testified that she is the supervisor of a program for emotionally disturbed children at Trumbull County Educational Service Center. J.D. participates in Revetti's program. Revetti testified that during the disclosure, she observed that J.D. was fidgeting, tapping, rocking back and forth, and his face was getting red.

{¶4}    At trial, R.N. testified that appellant's conduct began when she was six years old and continued until she was 12. R.N. testified that when she was six, appellant would cuddle with her and put his hand on her breasts, and that by the time she was seven the same conduct continued to occur but escalated to touching her breasts under her clothing. R.N. then testified that at eight years old, during the continued cuddling sessions, appellant would rub his "private part" against her butt, and that sometimes it was inside his pants, and sometimes outside of his pants. The behavior continued to escalate, and R.N. testified that appellant would then make her rub his private part with her hand, that by age ten, he rubbed her vagina with his hand, and by age 11, had put his mouth on her vagina. R.N. testified that he told her to "enjoy it." R.N. continued to testify about the conduct, that at age 11 he had her perform oral sex on him, and that on one occasion he offered her $20, and on another occasion offered her $40, for performing oral sex on him.

{¶5}    Because of her position, Revetti is a mandated reporter. She informed Children Services of J.D.'s disclosure and contacted the assistant principal at R.N.'s middle school, Tracie Liptak ("Liptak"). Liptak then approached R.N. at school. Liptak testified that R.N. became "very shaky" and "[h]er face turned beet red and the tears just

2

started to flow. * * * The first words out of her mouth were, 'I've been telling mommy this since I was six years old and no one believes me anyway.'" Liptak testified at trial that R.N. disclosed to her that if she told anyone what happened, her mother would be mad, her daddy would have to go away, the bills would not be paid, and she would be the reason her family is torn apart. Liptak testified that R.N. told her "on the weekends when he's drinking she will snuggle with him * * * he rubs his penis on her butt * * * and sometimes * * * she does fall asleep hard and she wakes up with her panties down around her ankle[s]."

{¶6} Detective Michael Banic ("Detective Banic") with the Hubbard City Police Department testified that he began investigating this case after R.N.'s school resource officer made him aware of it. Detective Banic testified that he interviewed appellant as part of his investigation. Detective Banic testified that appellant's demeanor was subdued when he sat down to talk with him, that appellant denied sexually assaulting R.N., and that he told Detective Banic that he didn't even like changing R.N.'s diaper when she was a baby. Detective Banic testified that appellant told him he was never alone with his daughter but admitted that they shared a bed together.

{¶7} Amanda McAllen ("McAllen") is a nurse practitioner for Children's Advocacy Center, a center that specializes in child abuse investigations. McAllen testified that she performed an exam on R.N. McAllen testified that she has performed more than 200 of these exams on others in the past. McAllen testified that the exam is intended to look for "physical findings of sexual abuse." While no physical findings were made, McAllen explained that is not uncommon. McAllen further explained regarding the exam, "it's an exception if we see * * * any physical findings of sexual abuse." McAllen described the

3

terms "grooming" and "delayed disclosure" as it relates to R.N.'s disclosure to J.D. after years of abuse:

> "Grooming" is when you – when something occurs and it slowly progresses. So, for instance, [R.N.] described that he had put his hand on her stomach. And she - - you know, that happened and didn't disclose anything. So then slowly it just progressed into worsening, desensitization of instances occurring. * * * "Delayed disclosure" is when you - - the victim will delay disclosing what happened to them for reasons of fear. And a lot of the time it will be that they - - the perpetrator is somebody who provides for basic needs. So they're scared those basic needs being taken from them.

{¶8}    During her evaluation, R.N. made further disclosures that were included in McAllen's written report. The notes detailed an encounter where appellant's hand was rubbing R.N.'s vagina. McAllen testified that R.N.'s description of pain felt during the experience was called an "experiential detail," and that because of R.N.'s prepubertal age, anything touching "the inside of the labial folds would have a sensation of hurting. And that's how, you know, we can gather that, you know, that she experienced it, because of that detail that she gives. She wouldn't know that it would hurt. Developmentally, she wouldn't know that."

{¶9}    Appellant submitted to a stipulated polygraph examination prior to trial. At the time of the polygraph examination, appellant was represented by different counsel than at trial. William Evans ("Evans"), the polygraph examination expert who administered the exam, testified.

{¶10}   Prior to Evan's testimony, appellant's attorney objected to the admission of the expert testimony and polygraph results, asserting that appellant's counsel was not present during the examination. Appellant believed that the stipulated polygraph agreement would not carry over to his new trial counsel. The State contended that

4

Case No. 2023-T-0025

appellant's counsel was, in fact, present, and that he was not allowed in the room with appellant while the examination was being administered. The State submitted as an exhibit the stipulated polygraph agreement, which contains a provision that binds successive counsel to the agreement. The trial court ruled that the examination and testimony would be admissible. At trial, Evans testified that appellant's responses indicated deception when questioned throughout the course of several sessions about sexual touching and sexual activity with R.N.

{¶11} The jury found appellant guilty on all counts of gross sexual imposition (counts 1-4, 6-7, 10, and 14), one count of rape (count 12), and the single count charged for compelling prostitution (count 13). The jury found appellant not guilty on four counts of rape (counts 5, 8-9, and 11). On March 1, 2023, appellant was sentenced to 60 months on each count of gross sexual imposition (eight counts in total), to be served concurrently. count 12 for rape and count 13 for compelling prostitution merged. The State elected to proceed on count 12 that resulted in appellant receiving 25 years to a maximum of life, with the count 12 sentence running consecutively with the 60 months for gross sexual imposition. Appellant's aggregate term is 30 years to life.

{¶12} Appellant timely appeals his conviction and raises four assignments of error for review.

{¶13} Appellant's first assignment of error asserts: "The trial court erred when it admitted the polygraph test results without providing the jury a cautionary instruction in accordance with *State v. Cleavenger*, 11th Dist. Portage No. 2019-P-0031, 2020-Ohio-1325, 153 N.E.3d 496."

5

Case No. 2023-T-0025

{¶14} Defense counsel made no objection to the failure to state a jury instruction on polygraph evidence. All but plain error is forfeited on appeal when counsel fails to object. *State v. Keith*, 3d Dist. Marion No. 9-22-28, 2023-Ohio-3428, ¶ 8, citing *State v. Kean*, 10 Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 65.

{¶15} This court recently noted in *State v. Walker*, 11th Dist. Trumbull No. 2022-T-0109, 2023-Ohio-2725, ¶ 38:

> "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. Appellant bears the burden of demonstrating plain error by proving that the outcome would have been different absent the plain error. [*State v.*] *Payne*, [114 Ohio St.3d 502. 2007-Ohio-4642, 873 N.E.2d 306] at ¶ 17.

{¶16} This Court further held, "Courts are cautioned 'to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Walker* at ¶ 39, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "To establish plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22." *State v. Little*, 11th Dist. Portage Nos. 2023-P-0011, 2023-P-0012, 2023-Ohio-4098, ¶ 77.

{¶17} The Supreme Court of Ohio articulated in *State v. Souel*, 53 Ohio St.2d 123, 372 N.E.2d 1318 (1978) syllabus, the required conditions for polygraph examination results to be admissible evidence for corroboration or impeachment in a criminal trial:

6

(1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

(2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

(3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:

(a)    the examiner's qualifications and training;

(b)    the conditions under which the test was administered;

(c)    the limitations of and possibilities for error in the technique of polygraphic interrogation; and,

(d)    at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

(4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given.

{¶18} This court applied the *Souel* conditions in *State v. Cleavenger*, 2020-Ohio-1325, 153 N.E.3d 496, ¶ 21 (11th Dist.):

Polygraph test results are generally inadmissible to prove an accused's guilt or innocence; they are likewise inadmissible for impeachment or enhancing credibility unless (1) the parties have stipulated their admissibility; (2) the court confirms the examiner's qualifications and test conditions; (3) the opposing party has had the opportunity to cross-examine the polygraph examiner; and (4) that the results do not tend to prove or disprove any element of the crime charged and the court must instruct the jury about the weight of the polygraph

7

evidence. *State v. Rowe*, 68 Ohio App.3d 595, 609-610, 589 N.E.2d 394 (10th Dist. 1990), citing *State v. Souel*, 53 Ohio St.2d 123, 132, 372 N.E.2d 1318 (1978).

{¶19} When a stipulation allows the results of a polygraph examination to be admitted, it is only for the purposes of corroboration or impeachment. *Souel* at syllabus.

{¶20} In its brief, the State concedes that no jury instruction was given to inform the jury about the weight of the polygraph evidence. A failure to give a jury instruction on the weight of the polygraph evidence is inconsistent with the fourth condition articulated in *Cleavenger.* Instead, a general instruction was given regarding the weight of the expert testimony presented at trial:

> Now, generally, a witness may not express an opinion. However, one who follows a profession or special line of work may express his or her opinion because of his or her education, knowledge and experience. Such testimony is admitted for whatever assistance it may provide to help you arrive at a just verdict.
>
> However, as with other witnesses, upon you alone rests the duty of deciding what weight to give – should be given to the testimony of the experts. In determining its weight, you will make – you will take into consideration their skill, experience, knowledge, veracity, familiarity with the facts of this case, and the usual rules for testing credibility and determining the weight to be given to the testimony.

{¶21} This general instruction does not meet the requirements of *Souel/Cleavenger.* Therefore, the issue before this Court is whether the trial court's failure to provide the *Souel/Cleavenger* instruction amounts to plain error.

{¶22} Several appellate districts have concluded it does not. The Second District Court of Appeals concluded the failure to provide the *Souel* instruction did not amount to plain error where "* * * [T]here is substantial other evidence in this record from which the

8

jury could predicate its verdict of guilty * * *." *State v. Rutherford*, 2d Dist. Greene No. 2001-CA-122, 2002 WL 398704 *2 (Mar. 15, 2002). The *Rutherford* court noted: "[t]he jury was instructed, as part of the general jury instructions, that it was the sole judge of the facts. The jury evidently took its role seriously, as evidenced by its acquittal of Rutherford on the charge of Aggravated Assault." *Id.* The Third appellate district similarly held "'[w]hile the trial court sub judice failed to instruct the jury as required under *Souel,* we cannot conclude that this error amounted to plain error in this case since there was substantial other evidence of Mary's guilt.'" (Citations omitted). *State v. Vielma*, 3d. Dist. Paulding No. 11-11-03, 2012-Ohio-875, ¶ 40.

{¶23} It is also worth noting that courts that have found the lack of jury instruction on the weight of polygraph evidence to be plain error dealt with cases where the polygraph examination was that of the complaining witness, or the co-defendant, and not the defendant as in the instant case.

> While the Tenth District has found that trial court's failure to instruct the jury as required under *Souel* constitutes plain error, those cases involved polygraph examinations of the complaining witness or the co-defendant, not the defendant like in this case. *State v. Lascola,* 61 Ohio App.3d 228 (1988) (complaining witness); *State v. Rowe,* 68 Ohio App.3d 595 (1990) (no stipulation and co-defendant); *State v. Fisk,* 10th Dist. No. 01AP1193, 2002–Ohio–2776, ¶ 72–75 (*Lascola* involved the polygraph examination of the complaining witness, not the defendant).

*Vielma* at ¶ 40.

{¶24} The Tenth District Court of Appeals concluded in *State v. Madison*, 10th Dist. Franklin No. 06AP-1126, 2007-Ohio-3547, ¶ 14-16:

> The distinction between affirmative evidence of guilt and evidence which says the defendant is lying * * * is a very fine distinction * * *. The distinction is so fine that we cannot say

9

the jury's verdict would have been different had the charge required by *Souel*, idem., been given.

\* \* \*

When we look at the trial court's statement to the jury and the instruction given as to expert testimony, the omission of the *Souel* instruction was not plain error.

{¶25} In *Madison*, the trial court gave both a general instruction regarding experts and gave the following statement:

THE COURT: Let me interject here a minute. The only thing this expert is testifying about is whether the defendant was deceptive or not in answering the polygraph. It has the answer is I'll tell you it's no, it doesn't mean he is guilty or not guilty. It's just is a piece of evidence that you can consider with all of the evidence. That's just one piece of the evidence. If we were going to say that he is qualified to say, well, he punched his wife, he is guilty. It's over. But that's not true. That's why we have a jury. This is only one piece of evidence. The only thing he is qualified to do is to say he was deceptive or not, period. That's all he is here for.

*Id.* at ¶ 13.

{¶26} Herein, appellant stipulated to the polygraph, and despite counsels' efforts to exclude the polygraph and the related testimony by Evans, Evans testified that the results of polygraph indicated deception. The trial court subsequently provided a general jury instruction on the weight of expert evidence. Such instruction is not a substitution for the instruction required by *Souel/Cleavenger*. However, in light of the plain error standard of review, we conclude that there was substantial other evidence of appellant's guilt. Thus, nothing in the record indicates, nor has appellant demonstrated, that had the jury instruction been given on the weight of the polygraph examination that the outcome would have been any different. Likewise, as the court aptly noted in *Rutherford*, the jury evidently took its role seriously, as it acquitted appellant of four counts of rape. Therefore, this court

10

Case No. 2023-T-0025

concludes that the omission of a cautionary instruction does not rise to the level of plain error. Accordingly, appellant's first assignment of error is without merit.

{¶27} Appellant's second assignment of error asserts: "The defendant was denied his right to the effective assistance of counsel because counsel did not request a cautionary jury instruction on the admission of the polygraph results[.]"

{¶28} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.E.2d 674 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*.

> "There is a strong presumption in Ohio that a licensed attorney is competent. *State v. Smith* (1985), 17 Ohio St.3d 98, 100; [*State v.*] *Sherman*[,11th Dist. Portage No. 98-P-0009. 1999 WL 454533, *3 (June 25, 1999)] at 8-9. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. *State v. Smith* (Dec. 22, 2000), Portage App. Nos. 99-P-0039 and 99-P-0040, unreported, at 18, 2000 Ohio App. LEXIS 6115."

*State v. Bates*, 11th Dist. Portage No. 99-P-0100, at *7.

{¶29} Similar to the plain error analysis conducted above, the second prong of the *Strickland* test requires appellant to show that, but for counsel's unprofessional errors, that the result would have been different to succeed on his claim. See *Strickland,* 466 U.S. at 694. In addressing appellant's first assignment of error, we concluded that the failure to give the *Souel/Cleavenger* instruction did not amount to plain error and that the outcome of the trial was not affected. As such, appellant cannot established that he was prejudiced by defense counsel's failure to object to the lack of a cautionary jury instruction

11

on the admission of polygraph evidence, or that the outcome of the trial would have been different had counsel requested the instruction. Because appellant has failed to satisfy the second prong required by *Strickland*, his second assignment of error is without merit.

**{¶30}** Appellant's third assignment of error asserts: "The convictions were against the manifest weight of the evidence[,]" and appellant's fourth assignment of error asserts: "[t]here was insufficient evidence against [appellant]." These assignments of error will be analyzed together.

**{¶31}** "[W]eight of the evidence addresses the evidence's effect of inducing belief." (Citation omitted.) *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) quoting *State v. Martin*, 20 App.3d 172, 485 N.E. 2d 717, 720-721 (5th Dist. 1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed 652 (1982).

**{¶32}** The jury is in the best position to weigh the evidence placed before it.

> When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). This is because the trier of fact is in the best position to "observe

12

and evaluate the demeanor, voice inflection, and gestures of the witnesses." *State v. Dach*, 11th Dist. Trumbull Nos. 2005-T-0048 and 2005-T-0054, 2006-Ohio-3428, ¶ 42. "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

*State v. Brown*, 11th Dist. Lake No. 2023-L-023, 2023-Ohio-3017, ¶ 67.

{¶33} In contrast, "[a] challenge to the sufficiency of the evidence raises the issue of 'whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Stacy*, 11th Dist. Portage No. 2022-P-0068, 2023-Ohio-3942, ¶ 14, quoting *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165. When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶34} Appellant was convicted of eight counts of gross sexual imposition, one count of rape, and one count of compelling prostitution.

{¶35} R.C. 2907.05, defining Gross Sexual Imposition, provides:

(A)      No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶36} R.C. 2907.02, defining Rape, provides:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * *

13

Case No. 2023-T-0025

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the person.

{¶37} R.C. 2907.21, defining Compelling Prostitution, provides:

(A) No person shall knowingly do any of the following: * * *

(3)(a) Pay or agree to pay a minor, either directly or through a minor's agent, so that the minor will engage in sexual activity, whether or not the offender knows the age of the minor * * *.

{¶38} Testimony was presented from Laura Revetti, the supervisor at J.D.'s school program, regarding the impact of R.N.'s disclosure. Revetti testified as to J.D.'s demeanor when he revealed what was happening to his sister. The jury heard testimony from Tracie Liptak, the assistant principal at R.N.'s middle school regarding what R.N. disclosed to her about the sexual abuse. Liptak said that R.N. was visibly upset, and much of her testimony corroborated what J.D. had disclosed. Liptak also testified that R.N. had told her she tried to tell her mother what was going on but was not believed. The State offered Detective Banic's testimony pertaining to his investigation of appellant, and appellant's behavior when he was questioned about the allegation of sexual abuse. The jury heard polygraph examination results and the testimony of polygraph expert, William Evans. Amanda McAllen testified regarding the examination she performed on R.N. Her report was admitted into evidence, and she discussed knowledge about the impact of sexual abuse on child victims. Finally, R.N. testified before the jury.

{¶39} The jury had the freedom to believe some, all, or none of the evidence that was presented at trial and was in the best position to weigh that evidence.

{¶40} The appellate court cannot substitute the trier of fact's judgment for its own. *Awan*, 22 Ohio St. 3d at 123. This Court finds that appellant's convictions were consistent

14

with the manifest weight of the evidence. Accordingly, appellant's third assignment is without merit.

{¶41} Several witnesses who observed R.N. make disclosures about her sexual encounters with appellant testified at trial. Witnesses, who observed her brother, J.D., share the same disclosures, also testified at trial. A nurse practitioner for Children's Advocacy Center who performed a medical examination on R.N. testified, and the resulting report she prepared was admitted as an exhibit for the jury to consider. Testimony from Detective Banic detailing his investigation of appellant was offered to the jury for consideration. Finally, R.N.'s testimony of her own experiences was offered to the jury. R.N. testified to sexual abuse that began happening when she was six years old, she testified that appellant offered her money for performing oral sex on him. R.N. testified to the pain she felt when appellant was touching her. McAllen provided testimony about her knowledge that supports R.N.'s experiences.

{¶42} A thorough review of the record indicates that there was sufficient evidence presented by the State for a jury to be convinced of appellant's guilt beyond a reasonable doubt. Accordingly, appellant's fourth assignment of error is without merit.

{¶43} For the foregoing reasons, we affirm the decision of the Trumbull County Court of Common Pleas.


MATT LYNCH, J., concurs,

JOHN J. EKLUND, J., concurs with a Concurring Opinion.


15

Case No. 2023-T-0025

JOHN J. EKLUND, J., concurs with a Concurring Opinion.

{¶44} I agree with the majority's ultimate judgment, but the majority's reasoning on the first assignment of error (the trial court's failure to give a special polygraph jury instruction) troubles me. I therefore write to emphasize the importance of strictly adhering to established judicial guardrails pertaining to polygraph evidence. Particularly troubling to me is that the trial court provided a general instruction on the weight to be afforded to expert testimony but failed to provide the required *Souel* instruction.

{¶45} While the majority acknowledges that this was improper, its analysis ignores what I perceive to be a fundamental difference between the standard "weight of the evidence" instruction (given below regarding the expert's testimony) and the *Souel/Clevenger* instruction. The former is designed to tell the jury *how to consider the evidence.* The latter is to tell the jury *for what purpose it may/may not consider the evidence at all.* The instruction given below not only abandoned the purpose of the special instruction, it expressly made the purposes for which the evidence could be considered *unlimited.* The court instructed that the expert's testimony was "admitted for *whatever* assistance it may provide to help you arrive at a just verdict" (emphasis added). Since a "just verdict" must be based on (among other things) the jury finding that the state proved each element of the offense charged, the instruction given here affirmatively condoned the jury's use of the evidence to prove an element of the crime charged.

16

Case No. 2023-T-0025

{¶46} This is not a matter of mere semantics. *Souel* and *Clevenger* were grounded in: (1) a concern that polygraph testimony unduly influences jurors (or at least it can); and (2) an acknowledgment that testimony about polygraphs may have some probative value. The courts recognized that discerning whether, and if so, to what extent, such testimony *was* unduly influential in a particular case is an inherently elusive goal. Thus, the courts called for a limiting instruction to reduce, so far as process can with any assurance, the chances that it was. After all, a properly instructed jury is presumed to have followed them. *See State v. Miller*, 11th Dist. Trumbull No. 2004-T-0082, 2005-Ohio-5283, ¶ 28.

{¶47} Without the instruction, how can a reviewing court, with any assurance, accurately judge whether or not a jury was unduly influenced? Especially when they essentially were instructed to do with the evidence whatever they wanted to. Law and judgment ought not to be left to unknowable chances and probabilities.

{¶48} So, under Ohio's current plain error standard of review, I believe the trial court committed an obvious error by failing to give the *Souel* instruction. *See* R.C.2945.11. The instruction it gave compounded the error and leaves us unable to discern whether or not the outcome of the trial would have been different had the trial court not committed it. Therefore, I am constrained to concur in the court's judgment, but disagree with its analysis of the first assignment of error.

17

Case No. 2023-T-0025